## The Tygert-Allen Fertilizer Company, Appellant, *v*. The J. E. Tygert Company.

*Trade-marks—Name of corporation—Laches.*

Where two firms agree to consolidate and form a corporation and transfer to such corporation the exclusive use of their names, " so far as they shall hereafter apply or become necessary to be used in the manufacture and sale . . . . materials," and the corporation uses one of the names in its corporate title, but not in any way upon its goods, and does not take a transfer for its use, but delays for two years and a half after another company has been formed and has used the name in its corporate title and as marks upon its goods, it will not be entitled to restrain the second corporation from the use of the name.

Argued March 28, 1899.    Appeal, No. 298, Jan. T., 1898, by plaintiff, from decree of C. P. No. 2, Phila. Co., Dec. T., 1893, No. 688, on bill in equity.    Before GREEN, McCOLLUM, MITCHELL, DEAN and FELL, JJ.    Affirmed.

Bill in equity for an injunction.

The case was referred to C. Stuart Patterson, Esq., as master, who reported a decree awarding an injunction to restrain the defendant from using the name J. E. Tygert.    Exceptions to the master's report were sustained by the court in banc.

The material facts are stated in the opinion of SULZBERGER, J., which is as follows :

The parties in this case are corporations carrying on the manufacture and sale of fertilizers in the city of Philadelphia and elsewhere.    The plaintiff is a corporation of New Jersey ; the defendant a corporation of West Virginia ; the former was incorporated July 2, 1889 ; the latter August 3, 1891.

The bill complained, in substance, of a breach of contract by the defendant and was afterwards amended so as to charge unfair competition.    The contract, breach of which was averred, was executed on July 1, 1889, under the following circumstances : Prior to July 1, 1889, W. N. Allen and N. Penrose Allen traded under the firm name of J. J. Allen's Sons, in the business of making and selling fertilizers, and J. E. Tygert and Herman S. Tygert traded under the firm name of J. E. Tygert & Company in a similar business.    They were competitors in

trade. On July 1, 1889, these four persons executed a sealed agreement whereby it was provided, in substance, to consolidate their firms and the business thereof by the organization of a New Jersey corporation with a capital of $150,000, the corporators being the parties to the contract, and one Samuel K. Robbins; the duration of the company to be fifty years. In pursuance of this agreement, the corporation plaintiff was organized on July 2, 1889. The fourth paragraph of the contract contains the covenant, breach of which is the ground of complaint. It is in the following words : " It is further agreed that the said parties hereto will sell and transfer by proper writings to said company their good will, brands and trade-marks heretofore used and owned by them respectively as manufacturers of and dealers in fertilizers, including the exclusive use of their names, so far as they shall hereafter apply or become necessary to be used, in the manufacture and sale or purchase of fertilizers and fertilizing materials, for the nominal sum of one dollar. All of said parties hereby specially covenant and agree to use their best endeavors to hold for the benefit of the new company all their respective customers in the business of fertilizers."

The master reported a decree awarding an injunction to restrain the defendant from using the name " J. E. Tygert " as any part of its corporate title, or as any part of the goods sold by it; and from placing the name " J. E. Tygert " on any box, bag or other package containing any goods sold by it; and also directing an account of defendant's sales so far as the same have been effected by the use of the name " J. E. Tygert." The effect of this decree is far-reaching, by reason of the Act of Assembly of June 28, 1879, P. L. 180. The parties deal in commercial fertilizers containing either ammonia, phosphoric acid, insoluble phosphoric acid or potash. The act requires that every package of such goods sold, offered or exposed for sale for manural purposes within this commonwealth, shall have plainly stamped thereon the name of the manufacturer, the place of manufacture, the net weight of its contents, and an analysis stating the percentage therein contained of nitrogen, or its equivalent in ammonia in an available form, of potash soluble in water, of soluble and retroverted phosphoric acid, and of soluble phosphoric acid. The decree recommended by the master would thus act as a practical injunction against the conduct of the de

fendant's business within this commonwealth. In view of the gravity of the circumstances, it is necessary to scrutinize the plaintiff's right with the utmost care.

Unfair trading consists in one party's using a name, word or device which another had adopted to distinguish his goods, and in using it under such circumstances and in such manner as to put off his goods as the goods of the other party. This is in effect the definition of Lord HERSCHELL, in Reddaway v. Banham, Appeal Cases, 1896, page 199, cited with approval by Lord HOBHOUSE, in the late case of Parsons v. Gillespie, decided on December 15, 1897 (Appeal Cases, 1898, page 244). This is the accepted result of the English decisions, with which our own are in harmony: " A rival who should appropriate a trade-name to his own use without the consent of the owners, and put his goods on the market bearing it, as though they were made by the rightful owner of the trade-name, is guilty of a fraud on the public, and a fraudulent taking from the proprietors, which is, both in intent and effect, a larceny: " Hoyt v. Hoyt, 143 Pa. 639. " The ground on which the courts will interfere in such cases is to protect the inventor from the attempt of his neighbor to sell his own work as and for the work of the inventor. This would be enjoined as a fraud upon both the inventor and the public : . . . ." Lafean v. Weeks & Co., 177 Pa. 432.

The master, having found that the plaintiff had not proved any infringement of trade-marks by the defendant, concluded that, in respect to trade-marks, the plaintiff was not entitled to any decree. He also concluded that it was not a case of unfair competition. He decided, however, that the defendant was guilty of continuing breaches of contract, and on that ground sustained the plaintiff's bill.

A man is presumed to have the right to use his own name and, if a contract is invoked to prevent such use, it ought to be clear, precise and indubitable. Tested by this standard, we find : (1) that neither of the parties in this case is a party to the contract; (2) that neither of the parties to this case was incorporated until after the execution of the contract between the parties thereto; (3) that the master, on the assumption that the parties in this case are bound by the contract, finds in the fourth paragraph the covenant alleged to have been broken.

The fact that neither of the corporations, plaintiff or defend-

ant, existed on July 1, 1889, when the contract was executed under which the plaintiff claims and the defendant is charged, presents grave difficulties.  In general, a corporation cannot acquire rights legal or equitable, or become charged with an obligation before the moment of its creation.  Unlike natural persons, it passes through no period of growth during which rights may be imputed before actual birth.  It comes into existence at a particular moment by the mere will of the sovereign, and has no previous life of any kind.  Its rights are created and fixed by the charter, and it is against public policy to hamper its career with unknown liabilities, affecting the interest as well of stockholders as of the public who deal with it.  We are not unmindful of the class of cases of which Edwards v. The Grand Junction Railway Company, 1 M. &. Cr. 650, was the first, which established the doctrine that a corporation may be bound by the contracts of its promoters entered into before incorporation, where it has accepted and received the benefit of a contract made in its behalf with the understanding that it would be adopted by it.  The propriety of the decision in that case has been questioned and denied in the house of lords, notably by Lord Chancellor CRANWORTH and Lord BROUGHAM, in Preston v. The Liverpool, Manchester, etc., Railroad Company, 5 H. L. 605, decided in 1856.  In the case of the Northumberland Avenue Hotel Company, 33 Ch. D. 16, decided in 1886 it was held that an agreement entered into between W. of the one part and D. as trustee for an intended company, on the day before the incorporation of the company, and therefore before the company was in existence, was incapable of confirmation, though the company acted under the agreement which it erroneously considered binding.  In our state, we have found only two cases on the subject.  In the first, Bell's Gap R. R. Co. v. Christy, 79 Pa. 54, decided in 1875, Mr. Justice PAXSON, delivering the opinion of the court, used this language : " We do not desire to controvert the principle, established in England and to some extent recognized in this country, that when the projectors of a company enter into contracts in behalf of a body not existing at the time, but to be called into existence afterwards, then if the body for whom the projectors assumed to act does not come into existence, it cannot take the benefit of the contract without performing that part of it which the projectors

undertook that it should perform." But the court said that, if this were conceded to be the law, the contract must have been made by a majority, at least, of such projectors. And it was held to be error to have refused the following point: " If Christy was not employed by the company as a company, nor by any one on behalf of the company, or by any corporator or authorized agent of the corporation, but was employed, if at all, by individuals, his remedy, if he have any, is against such individuals, and not against the defendants." The other, Tift v. Quaker City National Bank, 141 Pa. 550, cited and relied upon the former case. In neither was the plaintiff permitted to recover.

Treating the agreement of July 1, 1889, as an agreement of projectors or promoters of the corporation plaintiff, it would follow that three of them, at least, would be required to bind the corporation, meaning, of course, the corporation plaintiff, not another. The effort to bind the corporation defendant is wholly mistaken. Under no conceivable state of facts could a company, which was not projected or promoted till 1891, become liable under a contract for the promotion of another company two years before. The fact that two of the projectors of the plaintiff company were two of the five projectors of the defendant company has not the least significance, especially in view of the further fact that of the defendant's 400 shares of capital stock, J. E. Tygert and Herman S. Tygert own but two shares each.

There is, however, another obstacle to the plaintiff's success. We think the learned master's interpretation of the fourth paragraph of the contract of July 1, 1889, not warranted by its language. It is admitted that the formal transfer by articles stipulated for in that paragraph has never been made, and that the contract itself was not assigned to the plaintiff company. Certain acts contemplated by that paragraph to be done for the benefit of the plaintiff—such as the sale to it of the material on hand, and the furnishing to it of the customers' list by the parties to the contract for a consideration to be paid by the corporation—were carried into effect. The name " Allen " was used in designating the goods manufactured and sold by it, but no formal assignment was ever made, demanded or refused. The significance of this circumstance must not be overlooked. In-

deed, it elucidates and contemporaneously construes the fourth paragraph, which does not, as the learned master seems to assume, provide absolutely for the sale and transfer of the exclusive use of the parties' names, but only "so far as they shall hereafter apply, or become necessary to be used in, the manufacture, sale or purchase of fertilizers and fertilizing materials." The corporation was to last for fifty years ; but it is unreasonable to read into the fourth paragraph an option on the part of the company to postpone the decision as to the necessity or applicability of the parties' names until the end of this period of fifty years, or, indeed, beyond a reasonable time, sufficient to enable the company to determine its policy. Between the making of the contract and the filing of the bill, more than four years elapsed, during which time the plaintiff had never used the word "Tygert," as applied to the goods made by the corporation. It has used the word "Allen." The plain inference is that the plaintiff had considered the subject, and had decided that the name "Allen" was applicable and necessary for its goods, and equally that the name "Tygert" was not applicable or necessary. This interpretation of the facts explains the reason for the plaintiff's failure to demand the transfer stipulated in the fourth paragraph of the contract. Such a transfer had become unnecessary, and only competition by the defendant company suggested it, as an afterthought, more than four years later. If the plaintiff is allowed to prevail, we will not be protecting his right to the use of Tygert's name, but his right to keep Tygert's name unused by its owner, even though the plaintiff itself had no desire to use it. Such a right is unknown to the law.

It seems to us that, if the plaintiff has not been injured by unfair competition on the part of the defendant, it has suffered no injury and needs no relief ; and, that it has not been so injured has been substantially found by the master. We are unable to find in this case any basis in contract for the decree reported by the learned master. The law of Pennsylvania has not been astute to find grounds for the chancellor's interference in the mere rivalries of tradesmen in selling their wares. In the language of Mr. Justice WILLIAMS, in Lafean v. Weeks & Co., 177 Pa. 429, " The rule is unrestricted liberty in the practice of all arts and trades and in the use of the methods by which they are conducted."

·· To find in the case before us a contract on the part of J. E. Tygert that he will not use his name and trade for fifty years, which means for the rest of his life, and which, under the statute of 1879, also means that he shall not carry on his business at all, would be to go beyond what is authorized by any of the cases. There are circumstances under which the general policy against contracts in restraint of trade must yield to the higher policy of protection to the public, and also to the manufacturer or merchant infringed on ; but, in our opinion, this is not such a case. Still less is it a case for imposing the obligations of J. E. Tygert upon the defendant company, in view of the undoubted fact that the relations between the two companies, so far from being those of friendly contract, have been uniformly competitive and hostile. The bill is dismissed, at the costs of the plaintiff.

*Error assigned* was decree dismissing the bill.

*Hector T. Fenton* and *Richard P. White*, for appellant.—It is, upon the uncontroverted facts, apparent that the second clause of the decree recommended by the master was fully warranted and· ought to have been adopted by the court. The said second clause recommended that " a writ of injunction issue restraining the defendant, the J. E. Tygert Company, from using the name ' J. E. Tygert ' as any part of its corporate title, or as any part of the goods sold by it."

This decree was warranted, not because of the contract of July 1, 1889, between the Tygerts and Allens, but because the plaintiff, after its organization, and by direct contract of purchase with the old firm of J. E. Tygert & Co., became its successors in business, bought its whole plant, trade and business, as a going business, for a large cash consideration, and became the owner thereof with all the good-will appurtenant thereto.

· When the projectors of a company enter into contracts in behalf of a company not existing at the time, but to be called into existence afterwards, then if the body for whom the projectors assumed to act does come into existence, it cannot take the benefit of the contract without performing that part of it which the· projectors undertook that it should perform : Bell's Gap R. R. Co. v. Christy, 79 Pa. 54 ; Tift v. Quaker City National Bank, 141 Pa. 550.

There is no reference to an option, nor to any decision to be made, as to whether the company would or would not use the names. It was to have their exclusive use, and no such decision was called for. The view expressed by the court below, that any formal assignment or paper transfer to that effect was necessary, was clearly erroneous. Precisely this point on similar facts was so ruled by the Supreme Court of the United States in Richmond Nervine Co. v. Richmond, 159 U. S. 293.

It is manifest, on the evidence, that the decree recommended by the master was fully warranted, entirely irrespective of breaches of contract between the original assignors of the plaintiff, and irrespective of any infringement of technical trademark, or the specific trade-names of the goods made and sold, and is not inconsistent with the ruling in Hoyt v. Hoyt, 143 Pa. 623.

The plaintiff had the exclusive right to the use of the name of J. E. Tygert: Garrett v. T. H. Garrett & Co., 78 Fed. Rep. 472; Rogers Mfg. Co. v. Rogers & Spurr Mfg. Co., 11 Fed. Rep. 495; Rogers Co. v. William Rogers Mfg. Co., 70 Fed. Rep. 1017; Chemical Co. v. Meyer, 139 U. S. 540; Lepage Co. v. Russia Cement Co., 51 Fed. Rep. 943; Celluloid Mfg. Co. v. Cellonite Mfg. Co., 32 Fed. Rep. 97; McLean v. Fleming, 96 U. S. 245.

*John G. Johnson*, with him *Alfred Driver* and *J. Warren Coulston*, for appellee, cited Menendez v. Holt, 128 U. S. 521; Hoxie v. Chaney, 143 Mass. 595; Chas. S. Higgins Co. v. Higgins Soap Co., 144 N. Y. 467; Kerr on Injunctions, 19; Watts's App., 78 Pa. 394.

OPINION BY MR. JUSTICE FELL, May 8, 1899:

The learned master found that there had been no infringement of the plaintiff's trade-marks, and that the testimony did not show any unfair competition by the defendant. He sustained the bill and recommended a decree on the ground that there had been continuing breaches of contract by the defendant.

The contract in question was made July 1, 1889, by the members of two competing firms for the purpose of consolidating their business interests. The members of one of the firms were W. N. Allen and N. P. Allen, and of the other J. E. Tygert

and H. S. Tygert.  The contract provided for the sale of the merchandise of the firms to a corporation to be formed, and for the nominal consideration of $1.00 the parties agreed to sell and transfer by proper writings to the corporation their good-will, brands and trade-marks, including the exclusive use of their names "so far as they shall hereafter apply or become necessary to be used in the manufacture and sale or purchase of fertilizers and fertilizing materials."

The corporation formed was called "The Tygert-Allen Fertilizing Company," and the only use made of the name "Tygert" was as a part of this compound corporate title.  The products manufactured and sold were all advertised and sold as "Allen's Nitro-Phosphate," "Allen's Popular Phosphate," etc., the name "Allen" being used as a part of the trade-mark or brand of each of the seventeen different articles made and sold.  The name "Tygert" was never used by the corporation to designate any article manufactured or sold by it, and no request was ever made for a transfer of the right to its use, as provided for by the contract.

The corporation defendant was organized July 2, 1891, and its business has since been conducted within sixty feet of the plaintiff's office.  It has used the name "Tygert" in connection with the various brands under which its goods are advertised and sold, and has built up an extensive business.  The use of this name is essential to its continuing in business, as under the provisions of the Act of June 28, 1879, P. L. 180, every package of its goods offered for sale must have stamped thereon the name of the manufacturer.  The bill was filed January 12, 1894.

Aside from all questions as to the right of the plaintiff to enforce a covenant not made with it, but between third persons not parties to the bill, we think that the delay of the plaintiff has been such that under the circumstances it is not entitled to the relief sought.  The merchandise owned by the firms was to be inventoried and sold to the plaintiff at its market value; the "good will, brands, trade-marks, including the exclusive use of their names, so far as they shall hereafter apply or become necessary to be used in the manufacture and sale or purchase of fertilizers," etc., were to be transferred for a nominal consideration.  No transfer was ever asked for, and no use of the name

"Tygert" was made to designate the plaintiff's goods. Whatever right, if any, it acquired to the exclusive use of the name, it apparently abandoned. No value was given to the name by it as the designation of an article of merchandise. Its use by the defendant does not mislead the public, and it injures the plaintiff only as any other open and fair competition would do so. The plaintiff stood by for two years and a half without objection of any kind while the defendant expended large sums of money and built up a business, the life of which depends upon the use of this name. The covenant to transfer the use of the name was not an unconditional one, but only as it should "apply or become necessary to be used." By the option of the plaintiff it never has applied or become necessary for its use. In July, 1891, when the defendant was incorporated, it might well have been inferred that the plaintiff made no claim to the use of the name "Tygert," as all its goods had been put upon the market under another name. If the plaintiff intended to assert its right to its exclusive use, that was the time to speak. Its silence for two years and a half was more than mere laches; it was, under the circumstances, such evidence of acquiescence as to bar its remedy for equitable relief: Kerr on Injunctions, p. 16; Pomeroy's Equity, sec. 817–821.

The decree is affirmed at the cost of the appellant.