HAZLETT v. POLLACK STOGIE CO. et al.

(Circuit Court of Appeals, Third Circuit. March 28, 1912.)

No. 1,570.

1. TRADE-MARKS AND TRADE-NAMES (§ 85*)—INFRINGEMENT—RIGHT TO RE-
LIEF.

If one, having right by succession to use a trade-mark, trade-name, label,
or other distinguishing mark in the conduct of his business, deliberately
makes such use of it as is intended or calculated to deceive the purchas-
ing public as to the origin, manufacture, or ownership of the goods in
connection with which it is used, he is not entitled to relief in equity
against persons infringing or wrongfully using such trade-mark, trade-
name, label, or other distinguishing mark, to his detriment in connec-
tion with the sale of their own goods.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent.
Dig. § 94; Dec. Dig. § 85.*]

2. TRADE-MARKS AND TRADE-NAMES (§ 85*)—INFRINGEMENT—RIGHT TO RELIEF.

The administrator of Augustus Pollack, originator of "Pollack" stogies,
as successor to the business, is not entitled to restrain unfair competi-
tion and infringement of trade-marks, where he comes into court without
clean hands, through having misled the public to believe that Pollack still
lived; Pollack's personality being found to have been a factor in the cre-
ation and retention of the trade good will which his product enjoyed.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent.
Dig. § 94; Dec. Dig. § 85.*

Unfair competition in use of trade-mark or trade-name, see notes to
Scheuer v. Muller, 20 C. C. A. 165; Lare v. Harper Bros., 30 C. C. A. 376.]

J. B. McPherson, District Judge, dissenting.

Appeal from the Circuit Court of the United States for the West-
ern District of Pennsylvania.

Bill by Howard Hazlett, administrator of Augustus Pollack, against
the Pollack Stogie Company and others. Decree dismissing the bill
(188 Fed. 494), and complainant appeals. Affirmed.

Thomas S. Brown (Brown & Stewart, on the brief), for appellant.
Frank F. Reed (Edward S. Rogers, on the brief), for appellees.

Before GRAY, Circuit Judge, and BRADFORD and J. B. Mc-
PHERSON, District Judges.

BRADFORD, District Judge. [1, 2] This is an appeal from a
final decree of the circuit court of the United States for the western
district of Pennsylvania, dismissing a bill in equity, brought by How-
ard Hazlett, Administrator of Augustus Pollack, deceased, against
the Pollack Stogie Company of Pittsburgh, Pa., a corporation of
Pennsylvania, and C. G. Kiskaddon, M. W. DeWaters, John Benz,
Joseph Pollack, stockholders, directors and officers of said corpora-
tion, and Joseph Raubitschek, Rudolph Raubitschek and Edward
Raubitschek, partners doing business under the firm name of Raubit-
schek Brothers, alleging unfair competition in trade and infringe-
ment of trade-marks on the part of the defendants and praying for an
account and injunctive relief. The court below being of opinion upon
the proofs that, while the defendants had clearly violated the rights

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

of the complainant, the latter had not come into court with clean hands, decreed the dismissal of the bill, but without costs to the defendants, the respective parties to pay their own costs. It appears that during a period of many years prior to his death in 1906 Augustus Pollack had been engaged in the manufacture and sale of a species of cigars known as stogies, and had established an extensive and lucrative trade in that line. Such was the excellence of his product that in connection with sundry marks, labels, printed statements and other forms of dress used in the conduct of his business, his stogies became so associated in the public mind with his name as to be generally known as "Pollacks." The learned judge below said, "the personality of Pollack was a factor in the creation and the retention of the trade good-will which his product enjoyed"; and this certainly was true in the sense that his known connection with the manufacture of stogies largely accounted for the good-will which attached to his business. Owing to the defective execution of his intended will Augustus Pollack died intestate, and letters of administration on his estate were granted to Howard Hazlett, who by agreement of the widow and children of the decedent continued the business, established by him. That the complainant in the conduct of this business, after the death of Augustus Pollack, pursued a course calculated, if not intended, to mislead the public into the belief that the decedent was still living, and engaged in its active management, clearly appears from the evidence. For years after the death of Augustus Pollack and both before and since the commencement of this suit the complainant made use of a circular letter which was placed in each box of stogies sent out from the factory. The letter is dated Wheeling, W. Va., has a circular trade-mark at its head bearing the name "Augustus Pollack," and is addressed "To the Trade, Consumers and Public." It bears a fac-simile of Augustus Pollack's signature. The body of the letter is as follows:

"Gentlemen:

"The Crown Stogies Cigars, originated and manufactured by Augustus Pollack of Wheeling, W. Va. U. S. A. distinguished by national recognition for *perfect purity, absolute naturalness and uniform excellence,* have achieved their rank and fame by the cultivation under most trying circumstances, *during more than a generation,* of an unceasing devotion to ideal industrial integrity, loyalty to fair wages, elevating conditions of labor and highest standard of expert workmanship by the undersigned. The maker of the Crowns honored by the eloquent testimonials from distinguished sources in different sections of our country, conveying the popular impressions created by 'The Pollack Crown Stogies,' gratefully acknowledges his indebtedness to American encouragement, and requesting a continuance of approval and favorable consideration, avails himself of this occasion to tender his assurance of appreciation and high esteem.

Yours truly, Augustus Pollack."

At the foot of the letter was the statement that "The grades of the Crowns under protection of U. S. Patent Office Registration and Guarantee of Augustus Pollack" consisted of those shown in a list of patent office trade-mark registrations, therein set forth. This statement was misleading to purchasers, for the registrations were obtained, not by Augustus Pollack, but after his death by the complain-

ant, and the use of the words, "Guarantee of Augustus Pollack" in that connection was deceptive, to say the least. But this circular letter carried on its face by necessary implication an averment that Augustus Pollack was still living. No other interpretation can be put upon the clause:

"The maker of the Crowns, honored by the eloquent testimonials from distinguished sources in different sections of our country, conveying the popular impressions created by 'The Pollack Crown Stogies,' gratefully acknowledges his indebtedness to American encouragement, and requesting a continuance of approval and favorable consideration, avails himself of this occasion to tender his assurance of appreciation and high esteem.

Yours truly,                                    Augustus Pollack."

It appears from the testimony of the complainant that the circular letter above quoted was used before the death of Augustus Pollack, and it also appears that the latest date on that letter is 1910. But whether it was used in the life-time of the decedent is in our view immaterial, for after his death its continued use by the complainant without explanation amounted to a false representation that such death had not occurred and that purchasers would obtain the product, not of the complainant, but of Augustus Pollack. And this misrepresentation was accentuated by the insertion in the circular letter of a date years after Augustus Pollack had died. That the identification of Augustus Pollack in the public mind with the continued manufacture and sale of crown stogies cigars was considered by the complainant as an important factor in securing custom there can be no question; for it is stated that, manufactured by Augustus Pollack, they "have achieved their rank and fame by the cultivation under most trying circumstances, during more than a generation, of an unceasing devotion to ideal industrial integrity * * * and highest standard of expert workmanship by the undersigned," to wit, "Yours truly, Augustus Pollack." The record discloses a number of letters written after the death of Augustus Pollack which were put in evidence by the complainant for the purpose of showing the high reputation of the Pollack stogies, and it is a significant fact that of twenty-one such letters written in the years 1908 and 1909, fourteen were addressed to Augustus Pollack personally. If one, having right by succession to employ a trade-mark, trade-name, label or other distinguishing mark in the conduct of his business, deliberately makes such use of it as is intended or calculated to deceive or mislead the purchasing public with respect to the origin, manufacture or ownership of the goods in connection with which it is used, he is not entitled to relief in equity against persons infringing or wrongfully using such trade-mark, trade-name, label or other distinguishnig mark to his detriment in connection with the sale of their own goods. While little can be said by way of justification of the conduct of the defendants, and without discussing the evidence in detail, we agree with the court below that the course of the complainant after succeeding to the business of Augustus Pollack was not such as was demanded by a proper regard for the protection of the public against deception touching the subject matter as to which protection is sought against the defendants, and that his acts and omissions leave him no standing in a court of

equity for relief in the premises. With respect to the contention that the complainant, being a foreign administrator who has not obtained ancillary letters in Pennsylvania, has no title to maintain this suit, it is unnecessary in view of the conclusion reached to express an opinion. For the reasons above given the decree of the court below is affirmed, the costs in this court to be paid by the appellant.

J. B. McPHERSON, District Judge, dissents, believing that the facts of this case do not call for the application of the doctrine of "clean hands."