### W. F. & JOHN BARNES CO. v. VANDYCK-CHURCHILL CO. et al.

(District Court, S. D. New York.    June 11, 1913.)

1. TRADE-MARKS AND TRADE-NAMES (§ 93*) — UNFAIR COMPETITION — SUFFICIENCY OF EVIDENCE.

    In a suit to restrain unfair competition in the sale of upright drills or drill presses, evidence *held* insufficient to show a sale by defendant in such a way as to mislead the purchaser to believe that the drill sold was one manufactured by complainant.

    [Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. §§ 104–106; Dec. Dig. § 93.*]

---

2. TRADE-MARKS AND TRADE-NAMES (§ 75*) — UNFAIR COMPETITION — DECEPTION.

In determining whether unfair competition exists, actual deception need not be shown.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 86; Dec. Dig. § 75.*]

3. TRADE-MARKS AND TRADE-NAMES (§ 73*)—RIGHT TO USE OF NAME.

Where B., who had been employed for a great many years by a partnership composed of his two brothers, which was engaged in manufacturing upright drills or drill presses, and by a corporation subsequently formed by him and his brothers, which used their name as a part of its corporate name, after retiring from such corporation without any agreement restricting his continuance in business or the use of his name, formed a new company, known as the B. Drill Co., which manufactured a drill designed by him, and which in selling such drill did nothing constituting unfair competition, it could not be enjoined from using the word "B." or the words "B. Drill" as a part of its corporate name, since, in the absence of contract, fraud, or estoppel, a man may use his own name in all legitimate ways, and as the whole or a part of a corporate name.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 84; Dec. Dig. § 73.*]

In Equity. Bill by the W. F. & John Barnes Company against the Vandyck-Churchill Company and others. Bill dismissed.

Offield, Towle, Graves & Offield, of Chicago, Ill. (Charles K. Offield, of Chicago, Ill., of counsel), for complainant.

Luther L. Miller, of Chicago, Ill. (Duncan & Duncan, of New York City, and Lincoln B. Smith, of Chicago, Ill., of counsel), for defendants.

MAYER, District Judge. The complainant is a corporation doing business at Rockford, Ill., and engaged in manufacturing a line of machinery, including foot and hand power machinery, for use by carpenters and cabinet makers, scroll and jig saws, lathes, grinders, upright drilling machinery (sometimes called "drill presses"), and horizontal or radial drills.

The defendant Vandyck-Churchill Company is a corporation doing business in the city of New York, and engaged in selling tools and machinery, and, at the time the bill was filed, was the agent for the sale in that city and contiguous territory of the drill presses manufactured by the Barnes Drill Company, a corporation doing business also at Rockford, Ill.

The controversy is really between the complainant and the Barnes Drill Company. Briefly stated, complainant charges unfair competition, and in its bill prays for an injunction against defendants, restraining them from (1) manufacturing, handling, selling, or advertising in any manner upright drills, not made by complainant, having the word "Barnes" in any manner associated therewith, either alone or in connection or combination with other words; or (2) representing such drills to be "Barnes" or "Barnes drills"; or (3) handling, selling, or causing to be manufactured upright drills made in imitation of the external appearance of the drills made by complainant.

Although the record is not lengthy, the exhibits are many; but the facts upon which the decision must rest are few and simple.

John Barnes, W. F. Barnes, and Benjamin F. Barnes are brothers; John being the eldest, and B. F. the youngest. About 1872 W. F. and John entered into a partnership under the name of W. F. & John Barnes, and manufactured certain classes of machinery and implements, and ultimately some upright drills. B. F., during the partnership, with unimportant intervals of absence, was in the employ of his brothers, and, during most of the time, was the superintendent of the factory.

In 1884 the three brothers joined in incorporating a company under the name of W. F. & J. Barnes Company (afterwards W. F. & John Barnes Company); the greater part of the stock being held by the older brothers. B. F. was the vice president of the company until 1895, and the owner of some stock. His duties were those of a superintendent, and his testimony and that of his brother W. F. is that he helped design some of the articles manufactured by the corporation.

Because of capable business methods and the excellent character of its output, the corporation built up a large business, developing a substantial success in what are known as "standard-type upright drills," although this line was but a part of the general business of the company.

B. F. retired from the W. F. & J. Barnes Company in 1899, without any agreement on his part restricting his continuance in business or the use of his name. He designed a new type of drill, and for its manufacture he organized the B. F. Barnes Company, incorporated under the laws of Illinois in 1899.

In 1907 B. F. retired from this B. F. Barnes Company, selling his stock, and not making any agreement that he would not engage in the manufacture of drills, or that he would not use his own name in such business as he might enter into. Shortly thereafter B. F. Barnes Company adopted another name.

In association with some others, B. F. organized a company in 1907 under the laws of Illinois, incorporated as the Barnes Drill Company, and of this company he is the president and general manager, and the owner of the majority of the stock. He is, in effect, the sole manager of the Barnes Drill Company, and that company is manufacturing a drill designed by B. F., which, for brevity, will be called the "B. F. drill."

It is urged by complainant that the words "Barnes" and "Barnes drill" have acquired a secondary meaning, and that the complainant is the sole owner of these words as applied to upright drills and their manufacture, and, in brief, that no one else may use these words in connection with the sale and exploitation of drills of this general type.

It may be assumed, for the purposes of this case, that the words "Barnes" and "Barnes drill" have acquired the secondary meaning contended for: but, nevertheless, the complainant cannot prevail, because, even with this assumption, it has failed to sustain its charge against the defendants and their principal—on the contrary, the conduct of the Barnes Drill Company has been such as to negative satisfactorily the charge of unfair competition.

It is apparent that the litigants desire a decision squarely on the merits, and therefore no time need be spent upon the technical status of the formal defendants to the action.

[1] The testimony shows a single sale of a B. F. drill to a Mr. Hurd by Mr. Mawby, a salesman of Vandyck-Churchill Company. This latter concern has its salesroom in Liberty street, in the borough of Manhattan, city of New York; and in that street is also the well-known house of Manning, Maxwell & Moore, who are agents for complainant in New York and neighboring territory.

There is no significance in the fact that Vandyck-Churchill Company has its sales office in Liberty street, for that is well known as a machinery street or section, and Vandyck-Churchill Company does a general business, in which the sale of the B. F. drills was merely an incident.

The nature of the article is such that it cannot be supposed that purchasers buy drills without care, examination, or consideration. We are not dealing with some article of merchandise easily the subject of mistake by the buying public, but with an important machine, involving a substantial expenditure, and, while there may be an occasional careless purchaser, it is obvious that the men who purchase such machines are usually expert, and know exactly what they want. The testimony of Mr. Hurd is not convincing, if it is sought to create the impression that he thought he was buying a drill made by complainant. The testimony of Mr. Mawby, the salesman, relates the transaction as it might have been expected to happen. In brief, his testimony was that Mr. Hurd examined various drills, and selected the B. F. drill, because he needed such a drill promptly, and it suited his purposes. Hurd asked Mawby to put his price quotation in writing, and then he (Hurd) would confirm the order after he reached his office. The quotation letter written in accordance with this request was immediately made out and delivered to Hurd while he was still in the salesroom, and this letter and the invoice accompanying the the same described the drill as "one 20-inch Barnes Drill Company's drill press back-geared," and there was not the slightest attempt at deception. Even to an inexpert eye the B. F. drill was markedly different in appearance from the drills of other concerns, including that of W. F. & John Barnes Company, as is graphically set forth in the photographs opposite page 8 of the brief of defendants. On the machine itself are the words "Barnes Drill Co. Inc. 1907. Rockford, Ill."

[2] In determining whether unfair competition exists, it is, of course, well settled that actual deception need not be shown; but when an incident occurs which may be regarded as the most favorable that may be presented on behalf of a complainant, such an incident is serviceable as showing the methods employed, with a view of determining the character of the competition. Quite irrespective of the testimony as to this single transaction, no one could be misled (in the absence of actual misrepresentation) into believing that the B. F. drill was sold as if coming from complainant company.

It seems unnecessary to review the evidence in detail. It may be

that, because of the word "Barnes" appearing in the corporate name of each of these corporations, there has been some confusion in the mail; but that confusion has been slight, and apparently quickly remedied, and the defendant has not, by any trick or unfair dealing, availed of any business which might have been procured by reason of the misdelivery of mail, and, indeed, the Barnes Drill Company has been put to quite as much inconvenience as complainant. It may also happen that the name "Barnes" may help the Barnes Drill Company as an incident in its business; but for such a result, in the absence of unfair competition, the complainant can have no recovery against defendants.

[3] It appears that defendant is marketing only the type of drill which I have called the B. F. drill, and at a price considerably in excess of the standard-type upright drills of complainant. Therefore, upon the record in this case, I conclude that the defendants have not done any acts in any way to constitute unfair competition, and the only theory upon which complainant could recover would be that the Barnes Drill Company was not entitled to use the word "Barnes" or the words "Barnes Drill" as a part of its corporate name.

Counsel for both sides have analyzed with care certain well-known and leading cases on unfair competition; but it seems to me that the case of Howe Scale Company v. Wyckoff et al., 198 U. S. 118, 25 Sup. Ct. 609, 49 L. Ed. 972, is controlling and all the authority that defendants need. The last paragraph of that case states the law as applicable here, when Mr. Chief Justice Fuller says:

"We hold that, in the absence of contract, fraud, or estoppel, any man may use his own name, in all legitimate ways, and as the whole or a part of a corporate name. And, in our view, defendant's name and trade-mark were not intended or likely to deceive and there was nothing of substance shown in defendant's conduct in their use constituting unfair competition, or calling for the imposition of restrictions, lest actionable injury might result, as may confessedly be done in a proper case."

In the case at bar, B. F. Barnes is using his surname legitimately in the corporate name of Barnes Drill Company. In his instance, it is not a mere pretense, nor was he some person unfamiliar with the business, whose name was bought or used for purposes of fraud; but he was pursuing the avocation of a lifetime in a corporation of whose stock he was the majority owner, and of whose affairs he was the active manager.

If, at some future time, the Barnes Drill Company puts on the market drills in appearance like those of the complainant, and advertises or otherwise conducts its business in such a way as to create the impression that the Barnes Drill Company is the W. F. & John Barnes Company, or is selling their drills, then a different situation may be presented.

But here the defendant is in even a stronger position than were the defendants in the Howe Scale Case, supra. The general purchasing public buys typewriters, and might very well be attracted by the name of the maker; but here we have a trade article, bought in most, if not all, instances by skilled men, who usually purchase intelligently

and deliberately. The case does not involve any far-reaching question, but merely a determination of the facts in accordance with familiar principles.

The bill is dismissed, with costs. Settle decree on five days' notice.