CARSON et al. v. HARRIS.

No. 12276.

Court of Civil Appeals of Texas.
San Antonio.

Sept. 5, 1951.

Rehearing Denied Oct. 3, 1951.

Elmer Ware Stahl, A. R. Sohn, San Antonio, for appellants.

Chas. F. Guenther, Jr., W. Pat Camp, San Antonio, for appellee.

POPE, Justice.

This is an appeal from a permanent injunction forbidding appellants' use of a name and certain advertisements in connection with the operation of their restaurant business claimed to be operated in unfair competition toward appellee. The case was tried to the court without a jury.

From 1911 to 1940, Mr. and Mrs. W. W. Wolfe owned and operated a restaurant about three miles from the north city limits of San Antonio. Their place of business was located on the north side of a main traffic artery leading into the city and was surrounded with beautiful and scenic grounds. Mr. and Mrs. Wolfe operated the business under their own name, "W. W. Wolfe's Inn," and were highly successful and developed a fine reputation for their

superior service and food. Mr. Wolfe died in 1940, and thereafter Mrs. Wolfe continued on with the business for an undisclosed period of time. Sometime during 1945 she sold the restaurant to a Mr. Jackson, but no mention was made of the name or good will. The terms of that transaction do not appear, except that Mrs. Wolfe did receive a note for $16,000 secured by the restaurant property and real estate. Anton Greive in turn bought the same property from Jackson, but before he bought it he made a trip to Leakey, Texas, to see Mrs. Wolfe about the use of the name and he insisted that the name should also go with the purchase. At that time Mrs. Wolfe still held Mr. Jackson's note. She protested a transfer of the name, but finally, on August 9, 1945, complied with Mr. Greive's request to the extent of executing an instrument as follows: "That I, Estelle Wolfe, a widow, of San Antonio, Bexar County, Texas, having heretofore owned and operated a restaurant on the Fredericksburg Road, north-west of the City of San Antonio, Bexar County, Texas, which was generally known as the W. W. Wolfe's Inn, and being the sole owner of the same, for a valuable consideration to me in hand paid by A. S. Greive of Bexar County, Texas, the receipt of which is hereby fully acknowledged, have granted, sold and conveyed and do by these presents grant, sell and convey unto the said A. S. Greive, his heirs and assigns, the sole and exclusive right to the use of the following name, to-wit: Wolfe's Inn."

That document recited a valuable consideration and a sale of the name "Wolfe's Inn," but omitted the initials, "W. W." As a part of the sale of the premises, Mrs. Wolfe surrendered the note she held against Jackson and substituted in its place a note from Greive to whom she conveyed the name. Greive continued thereafter to operate the same business at the same place under the name, "W. W. Wolfe's Inn." He then changed it to "Wolfe's Inn" after the bulbs or tubes which illuminated the initials burned out. He also operated under the name of "Wolf's Inn." In April, 1950, Greive sold the business to appellee, Harris, and the sale included a transfer of the name "Wolf's Inn," and he has used both the name "Wolfe's" and "Wolf's" in the business. There was evidence before the court relating to the use of both names and, though disputed, appellee testified that Greive represented to him that he had the right to use the name, "W. W. Wolfe's Inn." He registered the name in the assumed name register as "Wolf's Inn."

Appellant Estelle A. Carson is the former Mrs. W. W. Wolfe, but she married K. F. Carson in 1946. After selling her property, she moved to Leakey, Texas, where she lived for an undisclosed period of time. On October 19, 1950, she went back into the restaurant business in San Antonio, Texas, at a place on the same side of the same street, about four and a half or five miles from her original place of business. She opened under the name of "W. W. Wolfe's Inn" and had a sign saying: "Mama Wolfe has come home." Her new place of business was advertised by the likeness of a wolf and promoted the slogan: "A Nice Place for Nice People." Still another sign read: "Wolfe's Inn." Other advertisements followed these patterns. Both before and after the sale of the restaurant in 1945, the symbol of the wolf and the slogan were in use as advertising media for the original business at the original location. Appellee, Harris, testified about his loss of business and the confusion among his customers.

Appellee, Harris, in the trial court obtained a permanent injunction against Mrs. Carson's use of the names "W. W. Wolfe's Inn, W. W. Wolf's Inn, Wolfe's Inn, or Wolf's Inn, or any other variation thereof or similar name, and the use of the names Wolfe or Wolf as a slogan or advertisement or as any part thereof or the use of any sign, emblem, or reproduction thereof using the form of the animal wolf or any part of such animal and the use of any similar name or the use of any variation of such names or the form of or any part of said animal" in connection with the restaurant business in Bexar County. Except for some findings in the judgment itself, no findings of fact and conclusions of law were filed. All issues which are supported by the evidence are presumed to have been found in support of the judg-

ment. State v. Balli, Tex.Civ.App., 173 S.W.2d 522, Id., 144 Tex. 195, 190 S.W.2d 71; Connor v. City of University Park, Tex.Civ.App., 142 S.W.2d 706; Clark v. Goidl, Tex.Civ.App., 3 S.W.2d 920.

As a general rule, one has a sacred right to the honest use of his own name, and this is true even though such use may be detrimental to other persons with the same name. Goidl v. Advance Neckwear Co., 132 Tex. 308, 123 S.W.2d 865; Edelstein v. Edelstein, Tex.Civ.App., 6 S.W.2d 400; Howe Scale Co. of 1886 v. Wyckoff, Seamans & Benedict, 198 U.S. 118, 25 S.Ct. 609, 49 L.Ed. 972; Rogers v. Rogers, 53 Conn. 121, 1 A. 807, 5 A. 675; Ida May Co. v. Ensign, 20 Cal.App.2d 339, 66 P.2d 727; Brooks v. Heartfield, Tex.Civ. App., 2 S.W.2d 510, 512; W. F. & John Barnes Co. v. Vandyck Churchill Co., D.C., 207 F. 855, Id., 2 Cir., 213 F. 637; Gates v. Gates Coal Co., 114 Pa.Super. 157, 174 A. 3. One who is junior in time may enter a business in competition with another of the same name, but he is under a duty to take precautions to avoid confusion. L. E. Waterman Co. v. Modern Pen Co., 235 U.S. 88, 94, 35 S.Ct. 91, 59 L.Ed. 142. But the right to use one's name may be voluntarily transferred or the subject of an estoppel or a self-imposed restraint of user and in such instances one may be deprived of the right to exploit his name in the future. Goidl v. Advance Neckwear Co., supra; Brooks v. Heartfield, Tex.Civ.App., 2 S.W.2d 510; Ajax Tool Co. v. Buchalter Tool Co., 125 Misc. 752, 211 N.Y.S. 241; 24 Am.Jur., Good Will, § 16; Annotated: 66 A.L.R. 999.

"It is, nevertheless, assumed that no one intends to part with the right to use his own name, and 'a presumption will not be indulged that he intended to convey it away in the absence of express language to that effect.' It must be clearly shown that it was his intention to part with his right thereto. Hazelton Boiler Co. v. Hazelton Tripod Boiler Co., 142 Ill. 494, 30 N.E. 339; Burns v. Navorska, 42 Ohio App. 313, 315, 182 N.E. 282. Generally, therefore, the case will turn upon the terms of the con-

tract." Da Pron v. Russell, 87 Colo. 394, 288 P. 178; 2 Callmann, Unfair Competition and Trade Marks, p. 1090.

The facts show that Mrs. Wolfe in her sale to Jackson did not obligate herself to forego reentry into the restaurant business, and no effort is made in these proceedings to enjoin Mrs. Carson from engaging in the restaurant business where she is presently located or elsewhere. This case concerns only the right to the use of a name and certain advertising techniques. The express contract with Mr. Greive made on August 9, 1945, for a recited consideration, altered appellant's right to the use of her name. That contract was delivered when Mrs. Carson contemporaneously substituted Greive as the debtor on the $16,000 note secured by the original Wolfe restaurant property. The name was not transferred in gross but in connection with the business and for a consideration.

We think appellant had the right to part with her name by transfer and that her right thereafter to use that name in a competitive business stood on an entirely different footing from her natural rights before the transfer. The authorities discussing the right to use one's own name, wherein the facts do not disclose a transfer, are not in point. Once she voluntarily divested herself of her natural right to use her own name, entirely new rights and duties came into being. Her rights thereafter were controlled by the rules ordinarily obtaining between two persons, neither of whom could claim the natural right to use of his own name. Appellee, Harris, could not claim the natural right because it was not his name; appellant Estelle A. Carson could not claim the natural right because she had parted with her right by a valid transfer. The principle invoked in such a situation is simply whether or not Mrs. Carson, after her transfer, has selected a name sufficiently similar to provoke competitive confusion and deception to the general public. The most difficult problem in connection with the case is whether appellant in conveying the name "Wolfe's Inn," also is prohibited from operating as "W. W. Wolfe's Inn." We think she is.

██ Appellant has selected a name that is confusingly similar in appearance, sound and meaning, to the eye, the ear and the imagination. We think the trial court was justified in its presumed finding that such was the intended result, especially when additional facts show that she also selected a symbol of a wolf as her business motif, and out of the endless number of possible mottoes, she centered upon the identical one already in use at appellee's place of business, to-wit: "A Nice Place for Nice People." This, taken with the facts that on her move from Leakey she selected the same side of the same street in the same city to open her competitive restaurant business, presents an instance where appellant has endeavored "to get such resemblances as will enable his goods to be sold, and such differences as will provide him with cover when his practice is discovered." Dunhall v. Barlett & Bickley, 39 R.P.C. 426 (Ch.Div.1922). The evidence supports the trial court's fact finding that such confusion is here present.[1]

██ Appellant Estelle A. Carson, when she opened her new restaurant, used a wolf as the symbol for her place of business and used the slogan: "A Nice Place for Nice People." These advertising devices were already in use by appellee at the prior and original place of business which appellant had sold five years previously. The rules touching the right to use these devices are apart from those pertaining to one's personal name. Such right of user is controlled by the rules of fair or unfair competition. Appellant, prior to the time she sold to Jackson, used these same devices, and the question is whether her failure to continue their use for the five-year interval, during which time appellee continually used them, constituted an abandonment. Appellant retired from the restaurant business and moved from the city, and there was a non-user for a period of five years, during which time another person expended his energies and resources, however small they may have been, associating the symbol and slogan in connection with his business. This sufficiently supports the inferences of abandonment and acquiescence. Royal Baking Powder Co. v. Raymond, C.C., 70 F. 376, 381, affirmed Raymond v. Royal Baking Powder Co., 7 Cir., 85 F. 231; Gold Seal Associates, Inc., v. Gold Seal Associates, Inc., D.C., 56 F.2d 452; Lawyers Title Ins. Co. v. Lawyers Title Ins. Corp., 71 App.D.C. 120, 109 F.2d 35; American Photographic Pub. Co. v. Ziff-Davis Pub. Co., 127 F.2d 308, 29 C.C. P.A., Patents, 1014; Tygert-Allen Fertilizer Co. v. J. E. Tygert Co., 191 Pa. 336, 43 A. 224. Since appellant abandoned the symbol and motto, "any other person has the right to seize upon it immediately * * and thus acquire a right * * * superior not only to the right of the original user, but of all the world." Seattle St. Ry. & Municipal Employees Relief Ass'n v. Amalgamated Ass'n of Street, Electric Railway, etc., 3 Wash.2d 520, 101 P.2d 338, 344; Barbizon Corp. v. Hollub, Sup., 41 N.Y.S.2d 117. The interim during which Mrs. Carson left her calling as a restaurateur and gave up her advertising symbols and motto permitted them, without protest on her part, to develop an entirely new associative significance in the community.

██ Whatever may have been appellant's former claims to the names, motif, slogan and advertising insignia, the evidence was sufficient to support their loss

1. Held to be confusing: Dorothy Gray Salons v. Mills Sales Co. of New York (Dorothy Jay Beauty Institute and Dorothy Gray), 162 Misc. 789, 295 N.Y.S. 204; In re Hoff (Hoff and Leopold Hoff's), 33 App.D.C. 233; Weiss v. Tucker (Little Darling Hat Co. and Little Miss Dolly Hat Co.), 129 Misc. 648, 222 N.Y.S. 487, reversed 222 App. Div. 801, 226 N.Y.S. 921; Louis' Restaurant, Inc., v. Coffey (Louis' Restaurant and Lois' Restaurant), 132 Misc. 690, 230 N.Y.S. 82; Mary Muffet, Inc., v. Smelansky (Mary Muffet and Mary Mason), Mo.App., 158 S.W.2d 168; Shailer v. Touraine Co. (Old Liberty Bell and Liberty Belle), 52 App.D.C. 276, 285 F. 1010; Brown-Forman Co. v. Beech Hill Distilling Co. (Old Tucker and J. C. Tucker), 30 App.D.C. 485; Adam Hat Stores v. Rice (Adam Hats and Aman Hats), D.C., 37 F.Supp. 261.

either by transfer, abandonment, estoppel or acquiescence. But she now urges that by reason of public policy she should be relieved of her voluntary act, since the advertising under the Wolfe name misleads the public. The exhibits show that appellee, Harris, advertises "Wolfe's Inn" by use, among other things, of matches which show that such inn is "owned and operated by Jimmy Harris." While the trier of facts had sufficient evidence to show the public was not misled, we do not rest our opinion on those grounds. It is true that some services may involve such personal skill and personality as to be a symbol of that individual, but a name originally associated with such person in time may become dissociated from the originator and associated with an impersonal business, which in this case occurred between 1945 and 1950. Ward-Chandler Building Co. v. Caldwell, 8 Cal.App.2d 375, 47 P.2d 758; Hallett v. Cumston, 110 Mass. 29; Kane v. Roxy Theatres Corp., 2 Cir., 65 F.2d 324; Jarvaise Academy of Beauty Culture v. St. Paul Institute of Cosmetology, 183 Minn. 507, 237 N.W. 183.

For a period of five years appellant did not assert the unassignability of her name, nor the invalidity of her transfer, nor did she raise her voice in protest. At a time coincident with her revived desire to re-enter business, she simply changed her mind. After arming her successors with her own solemn document transferring the use of her name for a consideration, and after permitting them to so operate and advertise to the public over a period of five years and to spend their energies and resources to foster the advertising meaning and develop a new impersonal associative significance, the court was, no doubt, unimpressed by appellant's belated zeal to save the public from a mistaken impression, which, for reasons satisfactory to her in 1945, she had helped create.

The judgment is affirmed.

W. O. MURRAY, Chief Justice.

I do not concur in the majority opinion.

It seems to me that appellee bases his entire cause upon the validity of the written assignment of the trade name "Wolfe's Inn," signed by Mrs. Estelle A. Wolfe on August 9, 1945. It is appellee's contention that by this alleged assignment Mrs. Wolfe has assigned her right to re-enter the restaurant business under the name of W. W. Wolfe, Mama Wolfe or any similar name, or to use the slogans she had theretofore popularized, such as "A Nice Place for Nice People."

The attempted transfer of the trade name "Wolfe's Inn" by Mrs. Wolfe was an attempt to transfer a naked trade name not made in connection with the transfer of any business owned by her and not made for the purpose of passing the good will of such business. Such a transfer of a trade name is known as one "in gross" and is void and unenforcible. In 52 Am. Jur. § 32, p. 525, it is said: "It may be stated as a general rule that a trade-mark or a trade name is not an article of property that may be transferred separately from the product or business with which it has become identified."

In Falk v. American West Indies Trading Co., 180 N.Y. 445, 73 N.E. 239, 240, 1 L.R.A.,N.S., 704, it is stated: "A trademark is not a piece of property that passes from hand to hand by assignment separate from the business of the owner of the trademark, or of the article which it may serve to distinguish. Generally, it passes only with the business and good will of which it is an inseparable part." See also: Corr v. Oldetyme Distillers, 118 F.2d 919, 28 C.C.P.A., Patents, 1057; Atlas Beverage Co. v. Minneapolis Brewing Co., 8 Cir., 113 F.2d 672; Mayer v. Flanagan, 12 Tex. Civ.App. 405, 34 S.W. 785.

The evidence is undisputed that prior to August 9, 1945, appellant, the former Mrs. Wolfe, had retired from the restaurant business and had moved to Leakey, Texas, to live. She had disposed of the premises formerly occupied by her in her restaurant business at the corner of Fredericksburg and Wurzbach Roads in Bexar County, Texas, by conveying them to a Mr. Jackson. We are not informed as to the details of this conveyance. Whether appellant, the former Mrs. Wolfe, sold the land

and premises together with the restaurant business and the good will thereof, or only the land and premises, the evidence does not show. The burden was on appellee to establish these facts. We do know that some time prior to August 9, 1945, appellant had gone out of the restaurant business and transferred the land and premises formerly occupied by her to Mr. Jackson. She held a note in the sum of $16,000 signed by Jackson, which was a vendor's lien against said land and premises, but this did not give her an interest in any business that might be conducted there. After the former Mrs. Wolfe had gone out of business and disposed of the property, she had either reserved the trade name to herself, abandoned it, or conveyed it to Mr. Jackson. She might have an interest in this name which she and her former husband, W. W. Wolfe, had popularized and given value in the restaurant business, but it was not such an interest as she could convey in gross to another after she had no business, nor good will of a business, to convey in connection with the trade name. Collas v. Brown, 211 Ala. 443, 100 So. 769.

In Mayer v. Flanagan, 34 S.W. 785, 786, the Court said: "But the primary function of a trade-mark is to indicate ownership and origin, and, unless this is truthfully done, it becomes a means of fraud upon the public, and will not be protected. And if a trade-mark is a personal one, designating a particular person and his reputation and skill, it cannot truthfully be used by any other person, and consequently cannot be assigned."

In 52 Am.Jur. § 33, p. 527, it is stated: "Where a trade-mark or trade-name is a personal one—that is, where it indicates to the public that the personal care and skill of a certain individual have been exercised in the selection or production of the goods or the rendition of the services in connection with which the mark or name is used— the general rule is that it is not assignable, for the reason that it would be a fraud on the public if such a mark or name were used by other persons."

In Vol. 2, Callmann's Unfair Competition and Trade Marks, § 784(a), p. 1085, it is stated: "Other cases have stated that an invalid assignment of a trade-mark amounts 'To nothing more than a declaration of non-ownership on the part of the unsuccessful assignor'; it 'accomplished nothing more than an abandonment of the mark (to the public) by the assignor,' or it 'resulted in the abandonment of the mark to the public.'" See also: Ranft v. Reimers, 200 Ill. 386, 65 N.E. 720, 60 L.R.A. 291; Buffalo Oyster Co. v. Nenno, 132 Misc. 213, 229 N.Y.S. 210; Wilcoxen v. McCray, 38 N.J.Eq. 466; Sarris v. Christie, Tex.Civ. App., 217 S.W.2d 99.

In Broeg v. Duchaine, 319 Mass. 711, 67 N.E.2d 466, 468, the Court said: "In these circumstances we think the plaintiff is in no position to invoke the aid of a court of equity to prevent the defendant from further using the trade mark. If the plaintiff has a valid trade mark in the name 'Mother Parker's,' it is because the public has become accustomed to regard the bakery products sold under that name as having been made by her or, at least, as emanating from a single source. When she permitted it to be used by the defendant in the circumstances here disclosed, she was enabling the defendant to palm off his goods as hers, thereby deceiving the public. It has been held, and we think rightly, that where the owner of a trade mark or trade name licenses another to use it in circumstances similar to those here he cannot call upon a court of equity to protect it."

While in the case at bar the licensee rather than the licensor of the trade name is seeking equitable relief surely neither one is in a position to enter a court of equity seeking redress. The court should leave the parties where it found them and lend its aid to neither.

The value of the trade name to appellant, the former Mrs. Wolfe, after she had retired from business was personal to her and could not be transferred to another in gross. The trade name when disassociated with her former business represented the skill and ability of appellant

and her former husband to select, cook and serve delicious chicken and steak dinners, and to transfer it to another in gross would be to make it possible for such other person to perpetrate a fraud upon the public by making them believe they were receiving this skill and ability, if they should patronize the restaurant of the transferee, when in truth and in fact they were not. Mayer v. Flanagan, supra, 52 Am.Jur., § 33, p. 527; Sarris v. Christie, supra; Vol. 2, Callmann's Unfair Competition, p. 1060, § 78, 1(d); Wilcoxen v. McCray, supra; Broeg v. Duchaine, 319 Mass. 711, 67 N.E. 466.

The evidence shows that Greive conducted the business under the name "Wolfe's Inn" and used the pictorial display of the animal wolf, together with the slogans coined by the Wolfes without letting the public know that the restaurant was under new management. It was his duty under the circumstances to inform the public of the change in management and his failure to do so precludes him and appellee, Harris, who claims under him, from receiving aid from a court of equity. Appellee does not come here with clean hands. Mayer v. Flanagan, supra; Sarris v. Christie, supra.

In 52 Am.Jur., § 152, p. 629, it is said: "Under the requirement of clean hands, material misrepresentation in the use of a trade-mark, trade-name, or label will defeat the right of the owner to relief in equity against an infringement or imitation by others, such provision in some cases being made by legislative enactment." 19 Am.Jur. § 469, pp. 323, 324; 30 C.J.S., Equity, § 98, p. 487; Precision Instrument Mfg. Co. v. Automotive M. M. Co., 324 U.S. 806, 65 S.Ct. 993, 89 L.Ed. 1381; Hazlett v. Pollack Stogie Co., 3 Cir., 195 F. 28, 39 L.R.A.,N.S., 632; Buckland v. Rice, 40 Ohio St. 526; Clinton E. Worden & Co. v. California Fig Syrup Co., 187 U.S. 516, 23 S.Ct. 161, 47 L.Ed. 282; W. A. Gaines & Co. v. Turner Looker Co., 6 Cir., 204 F. 553; Manhattan Medicine Co. v. Wood, 108 U.S. 218, 2 S.Ct. 436, 27 L.Ed. 706; Rosenthal v. Blatt, 80 N.J.Eq. 90, 83 A.

387; Broeg v. Duchaine, 319 Mass. 711, 67 N.E.2d 466.

I am also of the opinion that the alleged assignment of August 9, 1945, was without consideration and therefore void. It is true that the instrument on its face recites a consideration, but Greive, the only witness testifying as to a consideration, stated that he did not pay any money or thing of value for the assignment. There is some intimation that the exchange of vendor lien notes at the time of the closing of the deal between Jackson and Greive furnished a consideration for the assignment of the trade name. This very fact was in effect denied rather than established by Greive. Under examination by counsel for appellee, Greive testified as follows:

"Q. When you were out there wasn't it about the matter of you assuming a note or giving her a new note for the one she held from Mr. Jackson from whom you purchased the business? Wasn't that the nature of the transaction? A. No. The nature of the trip was that Mr. Jackson had taken me over to Leakey to find out about the name.

* * * * * *

"Q. Did you give her any money, or anything of value, for her signing this instrument concerning the use of the name Wolfe's Inn? (No answer.)

"Q. Did you give anything to Mrs. Wolfe for signing this instrument? A. No."

The assignment of the trade name being without consideration was null and void and unenforcible. 10 Tex.Jur. p. 112, § 65.

The assignment might, under some circumstances, estop Mrs. Carson from thereafter using the trade name, Wolfe's Inn, but estoppel was not plead nor attempted to be proved by appellee and is, therefore, not in this case. Vol. 2, Callmann's Unfair Competition, § 87, 3(a), beginning on page 1445.

Likewise, there was no attempt made to allege and prove that Mrs. Carson had abandoned her right to use the name

Wolfe's Inn, and therefore abandonment is not in the case. Mrs. Carson was not called upon to allege and prove that she had not abandoned the name Wolfe's Inn. Appellee, being the party seeking the injunctive relief, was charged with alleging facts and showing by proof that he was entitled to the relief sought. This must be done by clear and convincing proof and nothing can be left to speculation, conjecture or surmise. Beech-Nut Packing Co. v. P. Lorillard Co., 273 U.S. 629, 47 S.Ct. 481, 71 L.Ed. 810.

"In order that an abandonment may be established as a defense, it is essential to show, not only acts indicating practical abandonment, but an intent to abandon." Wallace & Co. v. Repetti, Inc., 2 Cir., 266 F. 307, 308, Southeastern Brewing Co. v. Blackwell, 4 Cir., 80 F.2d 607.

Mrs. Carson had a right to re-enter the restaurant business in a name by which she was known and one which she and her former husband had given value in the restaurant business, unless she had in some way legally precluded herself from doing so. Her subsequent marriage to Keyes Carson did not have the effect of destroying this right. Appellee attempted to show that appellant had precluded herself from doing so by executing the assignment of the trade name on August 9, 1945. This contract being illegal and void, appellee is without any ground for the relief he seeks. Dilworth v. Hake, Tex.Civ.App., 64 S.W.2d 829; Austin v. Lockett, Tex.Cr.App., 211 S.W.2d 986; Adam Hat Stores v. Lefco, 3 Cir., 134 F.2d 101; Edelstein v. Edelstein, Tex.Civ.App., 6 S.W.2d 400; Gleaves v. W. B. Fishburn Co., 5 Cir., 82 F.2d 627.

It is true that appellee has alleged in general terms unfair competition, but this was also plainly based upon the assignment of the trade name being valid.

Even if appellee was entitled to any character of relief herein, the judgment should go no further than to require appellants to use necessary precautions to inform the public that their restaurant is not in any way connected with the restaurant operated by appellee. Gleaves v. W.

B. Fishburn Co., supra; Buffalo Oyster Co. v. Nenno, 132 Misc. 213, 229 N.Y.S. 210.

Accordingly, I here enter my dissent from the opinion of the majority.

On Appellants' Motion to Certify
Point of Dissent.

NORVELL, Justice.

Appellants' motion to certify questions to the Supreme Court is denied for the following reasons:

First. This Court does not deem it advisable to present to the Supreme Court the issue of law involved for that Court's adjudication in accordance with the provisions of Rule 461, R.C.P. It is not made to appear from the motion to certify that this is a case over which the Supreme Court has no jurisdiction by writ of error. Simpson v. McDonald, 142 Tex. 444, 179 S.W.2d 239.

Second. By amendment of Rule 475, R.C.P., effective March 1, 1950, the procedure relating to conflicts of decisions was made applicable to certificates of dissent, consequently what was said by this Court in J. A. & E. D. Transport Co. v. Rusin, Tex.Civ.App., 202 S.W.2d 693, 702 (on motion to certify) is applicable to certificates of dissent. It follows then that when the motion to certify the point of dissent is overruled, the movant may then apply to the Supreme Court for a writ of mandamus under the provisions of Rule 475, R.C.P. The actual issuance of the writ, in the event the Supreme Court be of the opinion that the majority of the Court of Civil Appeals has not correctly stated the law upon the point is, however, contingent upon the continuing refusal of the majority to conform its ruling and decision to that of the Supreme Court as expressed in its opinion upon the application for writ of mandamus. Despite our action in overruling the motion for rehearing, we retain authority to change our decision so as to make it conform to such opinion a. may be rendered by the Supreme Court in passing upon a petition for mandamus. We, therefore, decline to certify the point of

dissent to the Supreme Court prior to the time such opinion is rendered.

In our opinion, the 1950 amendment to Rule 475 effected a change in the practice relating to dissents. For a statement of the history of the certified question rules prior to the 1950 amendment to Rule 475 see, Simpson v. McDonald, 142 Tex. 444, 179 S.W.2d 239; Akers v. Epperson, Tex. Civ.App. (on rehearing), 172 S.W.2d 512, 517.

Motion overruled.