## PRESIDENT SUSPENDER CO. v. MACWILLIAM.

(Circuit Court of Appeals, Second Circuit. November 14, 1916.)

### No. 37.

1. TRADE-MARKS AND TRADE-NAMES ☞1—NATURE OF TRADE-MARK.
    The sole function of a trade-mark being to indicate the origin of the goods, it cannot exist in gross or apart from the business in which it is used.
    [Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. §§ 1, 3; Dec. Dig. ☞1.]

2. GOOD WILL ☞5—CONVEYANCES—MODE OF CONVEYANCE.
    The good will of an established business is an incorporeal property, which may be sold in connection with the sale of the business on which it depends.
    [Ed. Note.—For other cases, see Good Will, Cent. Dig. § 2; Dec. Dig. ☞5.]

3. TRADE-MARKS AND TRADE-NAMES ☞35—CONVEYANCE OF TRADE-MARK—MODE OF CONVEYANCE.
    The sale of a business and its good will carries with it a sale of a trade-mark used in connection with the business, although not expressly mentioned in the instrument of sale.
    [Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. §§ 39, 40; Dec. Dig. ☞35.]

4. TRADE-MARKS AND TRADE-NAMES ☞35—CONVEYANCES—EFFECT OF.
    The inventor of a new suspender, who granted plaintiff an exclusive license for the manufacture of the same during the life of the patent, conveyed his business, as well as the good will and trade-mark. Plaintiff greatly extended the business by advertising the suspenders, which were sold under the name of the "President," with a tri-colored band around the web, and the inventor received large royalties. *Held* that, the contract having been carried out and the royalty payments made, the right to the trade-mark passed to plaintiff on expiration of the patent, notwithstanding a provision in the contract that it might be terminated on nonpayment of the royalties.
    [Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. §§ 39, 40; Dec. Dig. ☞35.]

5. TRADE-MARKS AND TRADE-NAMES ☞11—EXPIRATION OF PATENT—NAME OF PATENTED ARTICLE.
    On expiration of a patent for suspenders sold under the name and trade-mark "President," such name and trade-mark does not pass to the general public, the name never having constituted a generic description; consequently rights in the trade-mark were not affected by the expiration of the patent.
    [Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 15; Dec. Dig. ☞11.]

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

6. TRADE-MARKS AND TRADE-NAMES ⬱11—EXPIRATION OF PATENT—NAME OF PATENTED ARTICLE.

There is no presumption, on the expiration of the patent, that the name under which the patented article was sold passes to the public on the theory that it constituted a generic description of the article; but proof of that fact is essential for the expiration of the patent to effect rights in the trade-mark.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 15; Dec. Dig. ⬱11.]

7. CONTRACTS ⬱147(2)—CONSTRUCTION—PURPOSE.

While the sole purpose of construction of a contract is to ascertain the intention of the parties, the intent must be drawn from the language they have used.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. § 730; Dec. Dig. ⬱147(2).]

8. EVIDENCE ⬱397(1)—PAROL EVIDENCE—RULE—ADMISSION.

In the absence of fraud or mistake, parol evidence is not admissible to vary the terms of a written contract.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1756, 1763, 1764, 1765; Dec. Dig. ⬱397(1).]

Appeal from the District Court of the United States for the Southern District of New York.

Bill by the President Suspender Company against Hugh C. Macwilliam. From a decree for complainant (233 Fed. 433), defendant appeals. Affirmed.

The defendant, prior to October 1, 1898, was manufacturing and selling at St. Paul, Minn., a certain suspender which he had devised and to which he had affixed the word "President" as a trade-mark, together with a red, white, and blue banner emblem. On August 16, 1898, the defendant took out a patent on the suspender, being patent No. 609,286. The plaintiff at that time was known as the "C. A. Edgarton Manufacturing Company," and was also engaged in manufacturing and selling suspenders and the like. It maintained its factory at Shirley, Mass. The name "C. A. Edgarton Manufacturing Company" was changed in August, 1914, to "President Suspender Company." The business was an old and established one, and its product was known throughout the United States and in foreign countries.

On October 1, 1898, the defendant granted to the plaintiff, on a royalty basis, an exclusive license to manufacture and sell throughout the United States a suspender containing the improved feature covered by the patent. By the same instrument he transferred to the plaintiff the good will of the business. The clause reads as follows: "Said party of the first part agrees to and he does hereby turn over and transfer to the party of the second part the good will of his present business of manufacturing and selling said suspender within the United States, and all orders he now has or may hereafter take within the United States for the said suspender." The defendant also sold to plaintiff, as part of the same transaction, all the machinery, tools, and stock, finished and unfinished, and all other assets used by him in the business of manufacturing and selling suspenders under said mark and name "President" and under said banner device. The transfer carried the defendant's entire business and good will, and he at once went out of the suspender business; and the plaintiff at once began to manufacture and sell suspenders bearing the mark "President," and has continued the manufacture and sale to this day.

The plaintiff states that it has made and sold between 30,000,000 and 40,000,000 pairs of suspenders bearing the mark "President," and that the boxes accompanying the goods have always borne its name alone. It also claims to have expended about $750,000 in advertising the name "President,"

⬱For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

and it has paid the defendant royalties to the amount of about $500,000. In addition to the name "President," there has always been affixed with it a label or ticket having an emblem or banner comprising a blue escutcheon with red and white stripes, across which the mark "President" is printed.

The patent license expired on August 16, 1915, and thereupon defendant resumed the manufacture of "President" suspenders. He at the same time resumed the use of the trade-mark "President," and has affixed thereto a red, white, and blue banner practically identical in visual appearance with the banner used upon plaintiff's goods. Within two months thereafter the plaintiff brought this suit.

W. P. Preble, of New York City, for appellant.

Rogers, Kennedy & Campbell, of New York City, and Roberts, Roberts & Cushman, of Boston, Mass. (Robert Cushman and Charles D. Woodberry, both of Boston, Mass., of counsel), for appellee.

Before COXE, WARD, and ROGERS, Circuit Judges.

ROGERS, Circuit Judge (after stating the facts as above). The plaintiff claims to be the owner of the trade-mark "President" in connection with the business of manufacturing and selling suspenders. It seeks an injunction restraining the defendant from an infringement of its trade-mark. The injunction was granted by the court below, and the defendant has brought the case here on appeal.

The defendant applied for the registration of the trade-mark "President" on January 10, 1899. This was issued to him in his own name on May 16, 1899. After the decision of this case in the court below, the Commissioner of Patents ordered the cancellation of its registration; and an appeal from that order is now pending in the Court of Appeals for the District of Columbia. With that we are not in any way concerned.

The contract of October, 1898, granted to the plaintiff an exclusive license to make and sell to the end of the term of the patent the patented suspender, subject, however, to certain conditions which it is not necessary now to consider. It also transferred the good will of the business, as well as all the machinery, stock, tools, and other assets used by the defendant in the suspender business, and the latter wholly withdrew from the business of manufacturing and selling suspenders. The only real question in the case is whether the trade-mark "President" and the red, white, and blue escutcheon used with it passed from defendant to the plaintiff by virtue of the contract. The defendant answers the question in the negative. He says the trade-mark is not mentioned in the contract and has not passed.

[1] A trade-mark right cannot exist independently of some business in which it is used. The sole function of a trade-mark being to indicate the origin or ownership of the goods, it cannot exist apart from the business to which its use is incident. There is no such right known to the law as an exclusive ownership in a trade-mark apart from the right to use it in a business. It cannot exist as a right in gross. Thomas G. Carroll, etc., Co. v. McIlvaine (C. C.) 171 Fed. 125; Weener v. Brayton, 152 Mass. 101, 25 N. E. 46, 8 L. R. A. 640; Charles S. Higgins Co. v. Higgins Soap Co., 144 N. Y. 462, 39 N. E. 490, 27 L. R. A. 42, 43 Am. St. Rep. 769.

[2] The defendant agreed in the contract of October 1, 1898, to transfer the good will of the business to the plaintiff. The "party of the first part [the defendant] agrees to and he does hereby turn over and transfer to the party of the second part the good will of his present business of manufacturing and selling said suspender," etc. The good will of an established business is incorporeal property which the law permits to be sold in connection with a sale of the business on which it depends and of which it is an incident. Lewis v. Seabury, 74 N. Y. 409, 30 Am. Rep. 311; Cruess v. Fessler, 39 Cal. 336.

[3] A sale of a business and of its good will carries with it the sale of the trade-mark used in connection with the business, although not expressly mentioned in the instrument of sale. Kidd v. Johnson, 100 U. S. 617, 25 L. Ed. 769; Nelson v. Winchell, 203 Mass! 75, 89 N. E. 180, 23 L. R. A. (N. S.) 1150; Merry v. Hoopes, 111 N. Y. 415, 18 N. E. 714; Corbett Bros. Co. v. Reinhardt-Meding Co., 77 N. J. Eq. 7, 76 Atl. 243; Myers v. Kalamazoo Buggy Co., 54 Mich. 215, 19 N. W. 961, 20 N. W. 545, 52 Am. Rep. 811; Allegretti v. Allegretti Chocolate Cream Co., 177 Ill. 129, 52 N. E. 487. The principle is as well established as any in the whole law of trade-marks. The right to the use of a trade-mark passes to any one who takes the right to make or sell the particular article to which the trade-mark has been attached. Filkins v. Blackman, Fed. Cas. No. 4,786; Leather Cloth Co. v. American Leather Cloth Co., 11 H. L. Cas. 523.

[4] The defendant, however, says that the contract he made was not a sale. It was simply a license, and that how long it was to last depended on whether the plaintiff lived up to the contract. But it was an exclusive license for the entire life of the patent to manufacture and sell the patented article. The convenience of the parties was served by an agreement to pay and accept royalties on the suspenders sold during the life of the patent, with a right to terminate the contract in case of default. The agreement seems to have been observed to the letter. And now that the patent has expired the defendant asserts the right to use the trade-mark again. This court is unable to perceive any reason for holding that a patentee who gives an exclusive license to another to manufacture and sell a patented article for the life of the patent, and who at the same time transfers the good will of the business to the licensee, retains any right to the trade-mark which he can avail himself of during the life of the patent ordinarily or on its expiration. The cancellation clause did not impair the licensee's right to the trade-mark, any more than it impaired his right to sell the patented article. The right of the plaintiff to the trade-mark must be regarded as exclusive of the defendant, as was the plaintiff's right to manufacture and sell the patented article. The contract was never canceled, and the plaintiff has never lost the right to the exclusive use of the trade-mark which it has enjoyed for a period of 18 years during which time its value has been, presumably, constantly enhanced by the manner in which the plaintiff has carried on its business and by the expenditure of the sum of $750,000 in advertising over its own name the trade-mark "President." The public have identified and had the right to identify the "President" suspender

with the plaintiff's company. The obvious purpose of the use of a trade-mark in the sale of goods is to enable one to reap the benefit of the good will and reputation which he has built up for his goods by his skill and industry. The exclusive use of this trade-mark is still in the plaintiff, and the defendant cannot now be permitted to appropriate to itself the benefit of the good will of the business which it transferred to the plaintiff in 1898, and which the plaintiff's own conduct in the years which succeeded has so largely enhanced.

·[5, 6] It is true that the trade-mark was used with a patented suspender, and that in Singer Manufacturing Co. v. June Manufacturing Co., 163 U. S. 169, 16 Sup. Ct. 1002, 41 L. Ed. 118, it was decided that, if the owner of a patent had given to its product a name which constituted its generic description, the right to make the patented article and to use the generic name passed to the public upon the expiration of the patent, and that therefore the exclusive right to use the trade-mark ceased with the life of the patent. It is to be observed that the doctrine of the Singer Case rests upon the fact that the name had come to indicate the invention and thus constituted its generic description. The fact that the name "President" has come to indicate the invention and constitutes its generic description is one of fact, to be proved by evidence. There is no evidence in this record that the word "President" has ever come to indicate to the public the generic description of the suspender of the patent. The only evidence in the case indicates that it is a mark of origin, indicating the plaintiff, its business, and its goods. There is no presumption of law, without proof of the fact as above indicated, that a name used on a patented article passes to the public on the expiration of the patent. Hughes v. Alfred H. Smith Co., 209 Fed. 37, 126 C. C. A. 179.

But the doctrine of the Singer Case is inapplicable to the facts of this case for another reason. In the case at bar the name "President" antedated the patent. The defendant, in his application filed in the Patent Office on January 10, 1899, declared:

"The trade-mark [President] has been used continuously in business by me since January 1, 1897."

The declaration that it had been used by him continuously since January 1, 1897, is shown by the record to have been incorrect, in that he ceased to use it upon the making of the contract of October 1, 1898, and only resumed its use after the patent expired. There is, however, no evidence which contradicts the statement that he was using it in January, 1897. This was prior to the patent, which, as has been already stated, was granted on August 16, 1898. In Batcheller v. Thomson, 93 Fed. 660, 35 C. C. A. 532 (1899) the trade-mark antedated the patent by more than 2½ years, and the name rather than the patent gave value to the article, and this court held that the doctrine of the Singer Case was inapplicable. In the case at bar the name antedated the patent for 1 year and 7 months. We think the case is governed by the Batcheller Case, and not by the Singer Case.

The appellant's counsel did not on the argument contend that the appellant's right to use the trade-mark existed under the doctrine of the Singer Case, which was not referred to by him. We think it best,

however, to call attention to that case, and to state the reasons which seem to us to make it inapplicable to the facts herein involved. The appellant's counsel based his argument upon the theory that it was not intended by the contract he made on October, 1898, to transfer the trade-mark, and that the intention of the parties should prevail. No doubt the sole purpose of the interpretation of a contract is to ascertain the intention of the parties.

[7, 8] The first rule of construction, however, is that the intent of the parties, as expressed in the words they have used, must govern. And in the absence of fraud or mistake, and neither fraud or mistake is alleged, parol evidence cannot be received to add to or vary the contract as written. When the appellant, by his written contract transferred to the appellee the good will of his business, he transferred the trade-mark. Where the language of an instrument, as here, has a settled legal construction, parol evidence cannot contradict that construction. Godkin v. Monahan, 83 Fed. 116, 119, 27 C. C. A. 410; Hearne v. Insurance Co., 20 Wall. 488, 492, 22 L. Ed. 395.

The language the parties used in their contract of 1898 has, as we have pointed out elsewhere in this opinion, a settled legal construction, namely, that "good will" is inclusive of the trade-mark.

Decree affirmed.

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes