## REPLOGLE v. AIR-WAY CO.

(Court of Appeals of District of Columbia. Submitted January 8, 1923. De-
cided February 5, 1923. Rehearing Denied March 17, 1923.)

No. 1527.

1. **Trade-marks and trade-names and unfair competition ⟨key⟩35—Sale of business
carries with it right to trade-mark, even against assignor.**

A transfer of the business and good will of a company making a
patented article carries with it the right to the trade-mark under which
the business had been carried on, even as against the assignor.

2. **Trade-marks and trade-names and unfair competition ⟨key⟩35—Exclusive license
to make under patent accompanying sale of business and good will gives right
to trade-mark.**

A patentee, who gives an exclusive license to another to manufacture
and sell a patented article, and at the same time transfers the good will
of the business to the licensee, does not retain any right to the trade-mark
of which he can avail himself during the life of the patent.

3. **Trade-marks and trade-names and unfair competition ⟨key⟩44—Forfeiture of
trade-mark since Commissioner's decision cannot be considered on appeal.**

An alleged forfeiture of the right to a trade-mark, which took place
after the decision by the Commissioner of Patents, cannot be considered
by the Court of Appeals, whose duty it is, under Rev. St. § 4914 (Comp.
St. § 9459), to review the decision upon the record of the proceedings in
the Patent Office.

4. **Trade-marks and trade-names and unfair competition ⟨key⟩44—Evidence held not
to show return of trade-mark or surrender of license under patent.**

Where a patentee granted an exclusive license to manufacture and sell
articles under several patents, and at the same time transferred his
business to the licensee, which carried with it the right to use his trade-
mark, a statement in interference proceedings by the patentee, not on
oath, but as counsel, that the licensee had agreed to transfer one patent
back to him, without any statement it was the intention to transfer the
trade-mark back, is insufficient to show a return of the trade-mark.

5. **Trade-marks and trade-names and unfair competition ⟨key⟩35—Surrender of li-
cense under patent does not retransfer trade-mark assigned with business un-
der separate contract.**

Where it appeared, so far as the record was concerned, that the trade-
mark was assigned to the licensee under a patent, by an agreement
separate from the license agreement, the nonperformance of the conditions
of the license contract would not affect the title to the trade-mark.

Appeal from the Commissioner of Patents.

Trade-mark interference proceedings by Daniel B. Replogle against
the Air-Way Company. From a decision of the Patent Office in favor
of the company, Replogle appeals. Affirmed.

D. B. Replogle, of Berkeley, Cal., in pro. per.
C. W. Owen, of Toledo, Ohio, for appellee.

Before SMYTH, Chief Justice, ROBB, Associate Justice, and
SMITH, Judge of the United States Court of Customs Appeals.

SMYTH, Chief Justice. This is a trade-mark interference proceed-
ing, in which the decision of the Patent Office was against Daniel B.

⟨key⟩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Replogle and in favor of the Air-Way Company. The contest relates to the use of the name "Air-Way" on electric vacuum cleaners and parts thereof.

Replogle filed his application for registration of a composite mark, consisting of the words "Pneumode" and "Air-Way," on November 15, 1918, alleging that he had commenced the use of the mark some time prior thereto. Just before the filing of his application Replogle was engaged in manufacturing and selling, under the name of Bright Circle Manufacturing Company, an electric vacuum cleaner and parts thereof invented by him and covered by certain patents to which he applied the mark just mentioned. The Air-Way Company sought registration of the name "Air-Way" on December 26, 1919, having adopted it in the previous April.

In October, 1918, Replogle and another entered into an agreement with one Charles F. Bacon, of Toledo, Ohio, whereby Replogle agreed to deliver, at the request of Bacon, to a corporation to be formed, an exclusive license to manufacture and sell all of the products covered by the patents referred to, and applications for patents, belonging to Replogle, the license to last during the respective terms of the patents. Under this agreement Replogle was to receive a certain percentage of the gross sales as royalties, and $300 per month as a minimum royalty. The corporation was to proceed with reasonable diligence to manufacture at least 1,000 of the cleaners and put the same upon the market as soon as practicable. The contract further provided that Replogle should receive from the corporation an exclusive agency in the states of Oregon, Washington, and California for the sale of the articles manufactured under the license.

The corporation was formed, in accordance with the contract, and took the name of the Air-Way Company. It is this company which applies for registration of the mark "Air-Way." In due time the license provided for was delivered, at the request of Bacon, to the corporation, and the contract was in all respects carried out by the parties thereto. In addition to securing the license, the Air-Way Company purchased and took over all the business, good will, cleaner parts, tools, jigs, and property of every kind formerly used or employed by Replogle under the name of the Bright Circle Manufacturing Company.

[1] It appears, then, that Replogle transferred the entire business of the Bright Circle Manufacturing Company to the corporation, and with it whatever rights he had to the mark "Air-Way," and from that time on the Air-Way Company had the right to use the mark on the goods which it manufactured under the license. In view of this it is not necessary to determine whether or not Replogle was the first to adopt and apply the mark to patented goods, for if he was the first he conveyed his right in connection with his business to the Air-Way Company.

We have said that, where the owner of a trade-mark grants the right to another, either by sale or license, to use the mark on the goods with which its use is connected, and abandons its use himself, he cannot afterwards either deprive his assignee of the right to its use or set up

an adverse use. By use in connection with the business the assignee acquires the title abandoned by the assignor, and the title is of that exclusive character which is entitled to protection even against such assignor. Macwilliam v. President Suspender Co., 46 App. D. C. 45, and cases cited. The question is very fully discussed in President Suspender Co. v. Macwilliam, 238 Fed. 159, 151 C. C. A. 235, where many decisions are referred to. It is there said that there is no such right known to the law as an exclusive ownership of a trade-mark, apart from the right to use it in a business. It cannot exist as a right in gross. A sale of a business and of its good will carries with it the sale of the trade-mark used in connection with the business, although not expressly mentioned in the instrument of sale. Replogle had no right to the mark apart from the right to use it in connection with his business. That business was transferred to the Air-Way Company in December, 1918. If Replogle had the right to have the mark registered before he transferred his business to the Air-Way Company (and for the purposes of this case we assume he did), then the latter company acquired that right by transfer, and possessed it at the time it made its application on December 26, 1919.

[2] But Replogle insists that the agreement under which he transferred the business and the mark was not a contract, but a simple license, upon condition, inter alia, that the Air-Way Company would comply with its terms. The same defense was made in Macwilliam v. President Suspender Co., supra. In disposing of it the court said that it was unable to perceive any reason for holding that a patentee who gives an exclusive license to another to manufacture and sell a patented article for the life of the patent, and who at the same time transfers the good will of the business to the licensee, retains any right to the trade-mark which he can avail himself of during the life of the patent ordinarily or on its expiration. The right of the plaintiff to the trade-mark must be regarded as exclusive of the defendant, as was the plaintiff's right to manufacture and sell the patented article.

[3, 4] It is urged by Replogle that the agreement or license has been forfeited so far as the cord reel covered by one of the assigned patents is concerned, and that because of this the Air-Way Company's right to the mark has ceased. The reel is but part of the cleaner. When this alleged forfeiture took place does not appear. If it took place after the decision by the Commissioner of Patents, we cannot consider it, because our duty is to review the decision upon the record of the proceedings in the Patent Office. 33 Stat. 727, § 9 (Comp. St. § 9494); Rev. Stat. 4914 (Comp. St. § 9459). The only reference to it in the record appears in a statement made by Replogle—not as a witness under oath, but as counsel—that the Air-Way Company, he believed, had agreed to transfer the cord reel patent back to him. At best it is only a belief on his part. If it was a fact, he could have proven it without difficulty. We cannot give this statement any weight. Moreover, he does not say with whom the agreement was made, but, if made, he must have been one of the parties thereto. If it was the intention of the parties that the trade-mark should be returned to him at the same time the cord reel

patent was returned, why did not the agreement say so? Must we not assume that, since it is silent on the subject, the parties did not intend it should be returned?

[5] At the bar it was admitted that the Air-Way Company had ceased to manufacture the cord reel, but the time when it ceased to do so was not given. Unless, we repeat, it was before the decision of the Commissioner we cannot consider it. Anyhow it was not admitted that the title to the trade-mark was to be returned. In this regard it must be remembered that there is nothing in the license of the patents about the transfer of the Bright Circle Manufacturing Company's business or the trade-mark. That, so far as the record is concerned, was the result of a separate agreement. The nonperformance of the conditions of the license contract in no way affected the title to the business or trade-mark conveyed to the Air-Way Company. To say that it did would be to write into the contract something that was not placed there by the parties. This we cannot do.

The decision of the Commissioner is affirmed.