**ED HANOVER TRAILERS, INC., et al.,**
Appellants,

v.

**HANOVER MANUFACTURING COMPANY,**
Inc., et al., Appellees.

**No. 4594.**

Court of Civil Appeals of Texas.

Waco.

Sept. 28, 1967.

Rehearing Denied Nov. 2, 1967.

Dyche, Wheat, Thornton & Wright, Houston, Coulter Hoppess, W. C. Davis, Bryan, for appellants.

Fillmore & Fillmore, H. Dustin Fillmore, Schenk & Wesbrooks, Perry Wesbrooks, Wichita Falls, for appellees.

## OPINION

McDONALD, Chief Justice.

This is an appeal by defendants Ed Hanover Trailers, Inc., Edward Hanover, D. A. McBride, and J. D. Cowsar, from a judgment against them for $2500 actual and $5,000 exemplary damages for plaintiffs' loss of goodwill solely by reason of defendants' use of the tradename Ed Hanover Trailers, Inc.; and from permanent injunction enjoining defendants from using the name "Hanover" in connection with trailers manufactured or sold by them.

Plaintiffs Hanover Mfg. Co., Inc. and Ruble Langston sued defendants Ed Hanover Trailers, Inc.; Edward Hanover, J. D. Cowsar and D. H. McBride, alleging that defendants conspired to enter into unfair competition with plaintiffs; and that defendants fraudulently appropriated the goodwill of plaintiff and the trade name of "Hanover" in connection with the manufacture and sale of trailers. Plaintiffs prayed for damages, and for injunction against defendants' use of the name "Hanover" in defendants' business of manufacturing and selling trailers.

Trial was to a jury which found:

1) The corporate name of defendant is so similar to that of plaintiff that the public may be expected to mistakenly deal with one corporation when intending to deal with the other.

2) The slogan "Hanover Trailer" prior to 22 September 1964 acquired a secondary meaning in the trailer business of plaintiff Hanover Mfg. Co., Inc.

3) Use of defendant's name, Ed Hanover Trailers, Inc. is made intentionally by defendants, partly for the purpose of retaining for defendant corporation a portion of the goodwill acquired by and belonging to plaintiff Hanover Mfg. Co., Inc.

4) Use of defendant's name, Ed Hanover Trailers, Inc. is made intentionally by defendants in expectation that the public would deal with one corporation when intending to deal with the other.

5) Plaintiff Hanover Mfg. Co. Inc., prior to 22 September 1964, relied

on the slogan "Hanover Trailers" as a part of its sales promotion and goodwill.

6) Defendant's use of trade name Ed Hanover Trailers, Inc. is detrimental to plaintiffs Hanover Mfg. Co., Inc. and Ruble Langston, in the conduct of their trailer business.

7) Edward Hanover, Cowsar and Mc-Bride conspired to use the trade name Ed Hanover Trailers, Inc., partly to appropriate a portion of the goodwill of plaintiff Hanover Mfg. Co., Inc.

8) Such conspiracy was a proximate cause of damage to the goodwill of Plaintiff Hanover Mfg. Co., Inc.

9) Defendant Edward Hanover did not use the corporate name Ed Hanover Trailers, Inc., in good faith.

10) Defendants have not done everything reasonably necessary in the conduct of their business, Ed Hanover Trailers, Inc., to distinguish it from plaintiff, Hanover Mfg. Co., Inc.

11, 12) Plaintiffs have suffered damages by diminution of goodwill solely by reason of use by defendants of name Ed Hanover Trailers, Inc., in amount of $2500.

13) Defendants should pay exemplary damages for appropriation of the goodwill of plaintiff as follows:

McBride $1666; Hanover $1666; Cowsar $1668; Ed Hanover Trailers, Inc., $2500.

The trial court entered judgment for plaintiffs for $2500. actual damages, $5,000. exemplary damages (⅓ each against McBride, Hanover and Cowsar); (disregarded the exemplary damage award against Ed Hanover Trailers, Inc. of $2500); and entered permanent injunction against defendants' use of name "Hanover" in any way in connection with their manufacture or sale of trailers; ordered defendants to immediately effect a change of corporate name to eliminate "Hanover" therefrom; (and provided that defendant Edward Hanover may use his personal name as he chooses, except in connection with the trailer business).

Defendants appeal on 28 points, contending:

1) The injunction is contrary to law because there is no evidence that defendant Edward Hanover conveyed to plaintiffs the exclusive use of his name.

2) The trial court erred in rendering a money judgment for actual and/or exemplary damages.

3) There is no evidence, or insufficient evidence, to support the answers to Issues 1, 2, 3, 7, 8, 9, 10, 11, 12 and 13, and such answers are against the great preponderance of the evidence.

Edward Hanover was a welder and had made and sold stock trailers in Bryan from 1955. He operated as "Ed Hanover Trailers", and for a time as "Lifesavers Trailers, Inc." On February 11, 1963 defendant Hanover, plaintiff Langston, and others organized plaintiff corporation—Hanover Mfg. Co., Inc. to build and sell trailers. Langston owned some acreage on Highway 190 and built a building to house the operation of the corporation, which he rented to the corporation. Edward Hanover became President of the corporation and was in charge of building of the trailers. Langston became Chairman of the Board of Directors, but was not an officer or employee of the corporation. Langston and Hanover both personally endorsed certain loans made by a bank to the corporation. Cowsar was a stockholder and officer, and McBride was an employee of the corporation.

From February 11, 1963 to August 22, 1964 Hanover Mfg. Co. Inc. advertised

"Hanover Trailers" extensively in newspapers, magazines, and by circulars.

In choosing the name of the corporation, the incorporators recognized that Edward Hanover had a reputation for building trailers and wanted to use the name Hanover for the value that it had. Hanover consented to the use of his name in the corporate name. Langston acquired 51% of the stock, Hanover 37½%; and the balance was acquired by Cowsar and others. The trailers made and sold were not patentable, and are similar to trailers made by a number of other builders. Hanover Mfg. Co., Inc. had some financial troubles and some dissension arose among the stockholders and officers. In August, 1964 plaintiff Langston made a buy-sell proposition to Hanover and other minority stockholders. On August 22, 1964 Langston, as Party of the First Part, entered into a contract with Hanover, Cowsar (and 3 minority stockholders) as Parties of the Second Part, whereby Langston agreed to pay the Parties of the Second Part $10,000., and secure the release of Edward Hanover as a guarantor on a $25,000. note owed by the corporation at a Bryan bank; and Parties of the Second Part (Hanover, Cowsar, et al) agreed to:

"deliver to First Party all of the assets of Hanover Mfg. Co., including but not limited to, all physical properties, machinery, tools * * * goodwill * * * intending hereby to convey to said First Party * * * everything connected with or pertaining to said business * *.

"Second Parties agree to sell, transfer and assign to First Party all shares of stock owned or claimed by each and every one of said Second Parties. * *

" * * * provided however, that this is not to be construed as a non competition agreement, and Second Parties may, collectively or individually, engage in any competitive enterprise. * * * "

Thereafter, on October 30, 1964, Hanover and Cowsar formed the "Ed Hanover Trailers, Inc.", acquired a charter in such name, and set up the business of manufacturing and selling trailers across the highway from plaintiff, Hanover Manufacturing Co., Inc. McBride thereafter came to work for defendant corporation. There was confusion in the delivery of mail between "Hanover Mfg. Co., Inc." and "Ed Hanover Trailers, Inc."; and "Ed Hanover Trailers, Inc." sold some trailers to former customers of "Hanover Mfg. Co., Inc."

Plaintiff Langston admitted that he knew when he bought defendant Ed Hanover's stock and entered the August 22, 1964 contract, that Ed Hanover planned to go into the business of manufacturing and selling trailers in Bryan, and he had no objection to Ed Hanover and the others so doing, "just so long as they did not use the name 'Hanover'."

■ Plaintiff Hanover Mfg. Co., Inc., has the right to use the name "Hanover", but the question here presented is, does it have the *exclusive right* to use such name, as against Edward Hanover, whose personal name it is, and who reserved the right in the 22 August, 1964 contract, to enter the trailer business in competition with plaintiffs?

■ A person has the right to use his own name in his own business, either alone, or in connection with others, as in a partnership or in a corporation, in the absence of fraud, contract or estoppel. Goidl v. Advance Neckwear Co., Inc., Tex., 123 S. W.2d 865, 866; Carson v. Harris, Tex.Civ. App. (nre) 242 S.W.2d 777. Thus the defendants can use the name of "Hanover" in the trailer business unless Edward Hanover contracted such right away, or unless under the facts defendants have been guilty of a fraud in connection with such use, or is estopped.

■ Edward Hanover sold his stock and his interest in the "goodwill" of Hanover Mfg. Co., Inc. to plaintiff Langston. The sale of the goodwill of a business does not involve an obligation upon the vendor to

refrain from entering into a competing enterprise under his own name. Dutcher v. Harker, Mo.App., 377 S.W.2d 140; Ralph Bros. Furniture v. Ralph, 338 Pa. 360, 12 A. 2d 573, 575. And here Edward Hanover reserved the right to enter into a competitive enterprise with plaintiffs.

It is assumed that no one intends to part with the right to use his own name in the absence of express language to that effect. It must be clearly shown that it was his intention to part with his right to use his own name. Carson v. Harris, supra.

We think Edward Hanover did not convey to plaintiffs the exclusive right to the use of his name, and therefore had the right to use his name "Ed Hanover" in the competitive trailer enterprise which he reserved the right to enter into. This he could do, either alone or in a corporation. Goidl v. Advance Neckwear Co., supra.

Defendants' contention 1 is sustained. The injunction enjoining defendants from using the name "Hanover" in connection with trailers manufactured and sold by them, is dissolved.

The jury found that defendants' use of the name Ed Hanover Trailers, Inc. was made partially to retain for defendant corporation a portion of the goodwill belonging to plaintiffs; that defendants conspired to use the name Ed Hanover Trailers, Inc. to appropriate a portion of the goodwill of plaintiffs; that use of the name Ed Hanover Trailers, Inc. was not in good faith solely for personal identification; and that defendants had not done everything reasonably necessary to distinguish their business from plaintiffs'.

The jury further found that plaintiffs were damaged $2500. "for loss of goodwill *solely* by reason of defendants' use of the trade name Ed Hanover Trailers, Inc., as a direct and proximate result of the use of said trade name."; and the jury assessed exemplary damages.

Counsel for plaintiffs stated in oral argument that he could not conceive of a situation in which Ed Hanover could use his name in the trailer business without misleading the public.

"Every man has the absolute right to use his own name in his business, even though he may thereby interfere with and injure the business of another bearing the same name; provided he does not resort to any artifice, or do any act calculated to mislead the public as to the identity of the establishment, and to produce injury to the other *beyond that which results from the similarity of the names.*" Goidl v. Advance Neckwear Co., supra.

From the foregoing, it is apparent that any misleading of the public or injury from the similarity of the name *solely,* is not compensable.

Since the defendants had the right to use the name "Ed Hanover Trailers, Inc." in the conduct of their trailer business, any damage resulting *"solely"* by reason of the use of the trade name "Ed Hanover Trailers, Inc.", is damnum absque injuria.

And we think the evidence insufficient to support the answers to Issues 12 and 13, and that such answers are against the overwhelming weight and preponderance of the evidence. Contention 2 is sustained, as is contention 3, as applicable to Issues 12 and 13. We think the trial court erred in rendering a money judgment for plaintiff for actual or exemplary damages.

Moreover, it appears from the charge and the submission of the damage issues, that the case was tried on the wrong theory.

Reversed and remanded.