HANOVER MANUFACTURING COMPANY, INC., et al., Petitioners,

v.

ED HANOVER TRAILERS, INC., et al., Respondents.

No. B–618.

Supreme Court of Texas.

Nov. 13, 1968.

Rehearing Denied Dec. 11, 1968.

Fillmore & Fillmore, H. Dustin Fillmore, Schenk & Wesbrooks, Perry Wesbrooks, Wichita Falls, for petitioners.

Coulter Hoppess, Bryan, Dyche, Wheat, Thornton & Wright, E. H. Thornton, Jr., Houston, for respondents.

HAMILTON, Justice.

Hanover Manufacturing Company, the petitioner, appeals from a judgment by the Waco Court of Civil Appeals denying damages or a permanent injunction against the use of the name "Hanover" by Ed Hanover Trailers, Inc., in the business of manufacturing and selling trailers.

Edward Hanover was a welder and has made and sold stock trailers in Bryan, Texas, since 1955. He operated as "Ed Hanover Trailers," and for a time as "Life-Saver Trailers," until 1963. On February 11, 1963, Hanover and Ruble Langston and others organized the Hanover Mfg., Co., Inc., a corporation to build and sell trailers. Edward Hanover became president of the corporation and was in charge of building the trailers. Langston became Chairman of the Board of Directors, but was not an officer or employee of the corporation. Langston and Hanover both personally endorsed loans made by a bank to the corporation. John D. Cowsar was a stockholder and officer, and Douglas A. McBride was an employee of the corporation.

In choosing the name of the corporation, the incorporators had sought to capitalize upon Edward Hanover's reputation for building trailers. Hanover consented to the use of his name in the corporate name. In fact, part of the consideration which Edward Hanover gave for his stock in the Hanover Mfg. Co. Inc. was the right for the company to use his name. From February 11, 1963 to August 22, 1964 Hanover Mfg. Co. Inc. advertised "Hanover Trailers" extensively in newspapers, magazines, and in brochures and circulars. The trailers made and sold were not patentable and are similar to trailers made by a number of other builders.

Hanover Mfg. Co. Inc. had some financial troubles and some dissension arose among the stockholders and officers. On August 22, 1964 Langston made a buy-sell proposition to Hanover and other minority stockholders. On August 22, 1964 this contract was consummated, and Edward

Hanover and the other stockholders sold their interests to Langston. The written agreement was to deliver to the majority shareholder, Langston, * * * "all of the assets of Hanover Mfg. Co. including but not limited to all physical properties, machinery, tools * * * (and) goodwill. * * *" There was a proviso that the contract was "* * * not to be construed as a non competition agreement * * *" and that Edward Hanover and the other minority shareholders may "* * * collectively or individually, engage in any competitive enterprise."

Thereafter, in October, 1964, Edward Hanover and the other minority shareholders formed "Ed Hanover Trailers, Inc.," and began the business of manufacturing and selling trailers across the highway from the "Hanover Manufacturing Company, Inc." There was confusion in the delivery of mail between the two companies and there is evidence that the new corporation, "Ed Hanover Trailers, Inc.," sold some trailers to former customers of "Hanover Mfg. Co., Inc."

The Hanover Manufacturing Co., Inc. and Ruble Langston sued Ed Hanover Trailers, Inc., Edward Hanover, Cowsar, and McBride alleging a conspiracy to enter into unfair competition with the plaintiffs; and that the defendants fraudulently appropriated the goodwill of the plaintiff and the trade name of "Hanover" in connection with the manufacture and sale of trailers. The plaintiffs asked for damages and for an injunction against the defendants' use of the name "Hanover" in their business of manufacturing and selling trailers.

Trial was to a jury which in summary found: (1) Defendants' corporate name is so similar to plaintiff's that the public may be expected to deal mistakenly with one corporation when intending to deal with the other; (2) prior to the appearance of defendant corporation, the term "Hanover Trailer" had acquired a secondary meaning pointing to plaintiff corporation; (3) defendant's use of the name "Ed Hanover

Trailers, Inc." was intentionally calculated to induce consumers to deal with defendant when intending to deal with plaintiff; and (4) defendants have not done everything reasonably necessary to distinguish their firm from the plaintiff's corporation. The trial court entered judgment as found by the jury for plaintiff for $2,500 actual damages and $5,000 in exemplary damages, enjoined defendants permanently from using the name "Hanover" in any way in connection with the manufacture or sale of trailers, and ordered an immediate excision of the word "Hanover" from the corporate name of the corporate defendant.

The Waco Court of Civil Appeals reversed and remanded. 421 S.W.2d 144. The court held as a matter of law that injury arising solely from a similarity of name is not compensable; and that the evidence was insufficient to support the jury's findings awarding actual and exemplary damages to the plaintiff. The Court of Civil Appeals also held that there was no "fraud, contract or estoppel" to preclude Edward Hanover from using his own name in his own business.

The basis of the plaintiff's action in this case is the allegation that the defendants are attempting to appropriate the benefit of the goodwill of his established business by misleading the public. The common law has long protected the owner of a trademark having a "secondary meaning," which identifies the product in the mind of the public as that of a particular producer. This protection stems from the basic idea that a trademark or trade name represents the goodwill that has been built up by the energy, time, and money of the user of the mark. The jury has found that Ed Hanover Trailers, Inc. has attempted a misappropriation of this kind in this instance. Issue No. (4) answers affirmatively that the "use of defendant's name, Ed Hanover Trailers, Inc. is made intentionally by defendants in expectation that the public would deal with one corporation when intending to deal with the other."

■ The defendant asserts as a bar to the plaintiff's action the proposition that "every man has the right to use his own name in his business, and this right cannot be taken from him by a prior appropriation by other parties," Brooks v. Heartfield, 2 S.W.2d 510, 512 (Tex.Civ.App.—Beaumont 1928, no writ.)

This Court recognized the right of every person to use his own name in his own business when the Court stated in Goidl v. Advance Neckwear Co., 132 Tex. 308, 123 S.W.2d 865, 866 (1939), that "A person has the right to use his own name in his own business, either alone or in connection with others, as in a partnership or in a corporation, in the absence of fraud, contract, or estoppel."

■ The rather narrow question in this case is therefore whether Edward Hanover has acted in such a way as to bring himself and his associates within one of the limitations enunciated by the Court in the *Goidl* opinion on the right to use one's own name. This Court feels that the defendants have, by their actions, limited their ownership in Edward Hanover's name. Specifically, they have by their prior actions estopped themselves from asserting as a defense to their appropriation of the plaintiff's goodwill the right of Edward Hanover to use his own name. The case at bar is thus clearly distinguishable from the *Goidl* case, where the defendant in the trial court, Arthur Goidl, had done nothing to restrict his right to the use of his own name and hence nothing to estop his assertion of that right as a defense.

First, in this case Edward Hanover from February, 1963, to August, 1964, held out to the world that the petitioner, Hanover Mfg. Co., Inc. had the right to use his name, and by his own acts and acquiescence notified the business world that such was the name and designation of Hanover Mfg. Co.'s trailer products. From August, 1964, to October, 1964, Edward Hanover abandoned entirely the use of the Hanover trade name to the Hanover Mfg. Co., Inc. The parties admit that the Hanover name is a valuable property right, and part of the goodwill of the business. Here we have evidence and a jury finding that Edward Hanover relinquished to the Hanover Mfg. Co., Inc. the goodwill and his right to use his own name. Having so done, he is now estopped from asserting that right as a defense to an action for his appropriation of the plaintiff's goodwill. Brooks v. Heartfield, 2 S.W.2d 510 (Tex.Civ.App.—Beaumont 1928, no writ); Dodge Stationery Co. v. Dodge, 145 Cal. 380, 78 P. 879 (1904); see also, Findlay, Incorporated v. Findlay, 18 N.Y.2d 12, 271 N.Y.S.2d 652, 218 N.E.2d 531, motion to amend remittitur granted, 18 N.Y.2d 676, 273 N.Y.S. 2d 422, 219 N.E.2d 872, cert. denied 385 U.S. 930, 87 S.Ct. 289, 17 L.Ed.2d 212 (1966), noted in Buffalo L.Rev. 508 (1967).

■ Secondly, Edward Hanover withdrew from the Hanover Mfg. Co., Inc. after expressly selling his interest in the goodwill the company owned. Edward Hanover did not obtain from the corporation concurrent rights in the "Hanover" symbol; he did specifically agree "not to publish or utter any charges or words which would tend to harm the said business." Ordinarily, the sale of a business and its goodwill, in this case a delivery of "everything connected with or pertaining to said business," carries with it the trademark, even where the mark corresponds with the personal name of the seller. Replogle v. Air-Way Co., 52 App. D.C. 364, 287 F. 765 (1923); Hoxie v. Chaney, 143 Mass. 592, 10 N.E. 713 (1887); President Suspender Co. v. MacWilliam, 238 F. 159 (2d Cir. 1916), cert. denied 243 U.S. 636, 37 S.Ct. 339, 61 L.Ed 941 (1917). In this case, having given up the "goodwill", Edward Hanover is estopped from asserting his right to use his own name as his defense in an action enjoining him from now inconsistently appropriating that goodwill. Carson v. Harris, 242 S.W.2d 777 (Tex. Civ.App.—San Antonio 1951, writ ref'd n. r. e.); Karsh v. Haiden, 120 Cal.App.2d 75, 260 P.2d 633 (1953).

The judgment of the Court of Civil Appeals dissolving the injunction is reversed and the order of the trial court enjoining Ed Hanover Trailers, Inc. from operating under the Hanover name is reinstated.

The Court of Civil Appeals has held the evidence to be insufficient to support the award of particular damages to the petitioner. This Court has no jurisdiction to review this holding and cannot render judgment for petitioner on the issue of damages. In view of petitioner's waiver in such an event, we hereby render judgment that petitioner take nothing in his suit for damages.

REAVLEY, J., not sitting.