**Mary HALTOM, Appellant,**

v.

**HALTOM'S JEWELERS, INC. and Deux Jacques, Inc., Appellees.**

**No. 2–84–217–CV.**

Court of Appeals of Texas, Fort Worth.

June 12, 1985.

McDonald, Sanders, Ginsburg, Maddox, Newkirk & Day and Sam J. Day and William L. Latham, Fort Worth, for appellant.

Tarlton, Douglas, Kressler & Wuester and Ben A. Douglas and Bonnie Cade, Fort Worth, for appellees.

Before JORDAN, ASHWORTH and HOPKINS, JJ.

## OPINION

HOPKINS, Justice.

This appeal is brought from the granting of an injunction against appellant Mary Haltom, enjoining her from using her name in connection with the jewelry business in Tarrant County, Texas.

We reverse and render.

Appellant owned six percent (6%) of the stock of Haltom's Jewelers, one of the oldest and most established jewelry businesses in Fort Worth. In 1983, she and her parents, who together owned a fifty percent (50%) interest, agreed to sell their Haltom's stock after the stockholders owning the remaining fifty percent (50%) interest had agreed to sell theirs. The stock was purchased by appellees Deux Jacques, Inc. which intended to continue operations

under the Haltom's name. At the time of sale, the appellees were aware that appellant intended to establish her own jewelry business and they did not seek a noncompetition agreement to limit her rights in any way.

Appellant soon thereafter opened a competing jewelry business under the name "Mary Haltom". She advertised with the slogan "Mary Haltom, a tradition in fine jewelry". Appellees complained of her use of the Haltom name and of her attempts to take advantage of the goodwill derived from it. Appellant then changed her advertising slogan to "the epitome of fine jewelry", but continued to use the name "Mary Haltom". She also switched her telephone directory listing from the "H" section to the "M" section.

Appellees brought suit against appellant, alleging unfair competition in the use of her surname. Appellees did not dispute appellant's right to compete, only her right to use the name "Haltom". Trial was to a jury which found: (1) the name "Mary Haltom" is so similar to that of "Haltom's" that a person using such care, as the public in general may be expected to exercise, would, by mistake, deal with one business when he or she intended to deal with the other; (2) the word "Haltom's" has acquired secondary meaning in association with the goods and services sold by Haltom's Jewelers, Inc.; (3) Mary Haltom conducted her business in such a manner that a person using such care, as the public in general may be expected to exercise, would, by mistake, deal with Mary Haltom when he or she intended to deal with Haltom's Jewelers, Inc.; (4) Haltom's Jewelers, Inc. will suffer monetary loss when persons mistakenly deal with Mary Haltom when they intended to deal with Haltom's; and (5) Mary Haltom has neglected to do everything reasonably necessary in the conduct of her business to distinguish the sale of her goods and services from the goods and services offered by Haltom's Jewelers. Mary Haltom was enjoined from thereafter using the name "Haltom" in connection with the jewelry business in Tarrant County.

On appeal, appellant alleges that the jury findings do not establish a cause of action of unfair competition because every person is entitled to the nonfraudulent use of his or her own name absent proof of relinquishment of that right by contract or estoppel. Appellees argue that the mere existence of secondary meaning or confusion in the marketplace will bar all others from using the same or similar name, even without fraud, contract, or estoppel. In the alternative, appellees argue that they proved fraud, contract, and estoppel.

■ Appellees' contention that secondary meaning alone establishes a right to exclusive use of a personal name is without merit. The Supreme Court has established that a person is entitled to use his or her own name, absent fraud, contract, or estoppel, even though such use may be detrimental to another person who was using the same name prior in time. *Goidl v. Advance Neckwear Co.,* 132 Tex. 308, 123 S.W.2d 865, 866 (1939).

Appellees are incorrect in arguing that *Hudgens v. Goen,* 673 S.W.2d 420 (Tex. App.—Fort Worth 1984, writ ref'd n.r.e.) establishes secondary meaning as the sole test of unfair competition in trademark cases involving personal names. In *Hudgens,* the plaintiff sued to enjoin the defendant from using the plaintiff's surname. In the case at bar, the plaintiff sued to enjoin the defendant from using the defendant's own surname. Therefore, the existence of secondary meaning was determinative of the *Hudgens* case because the right to use one's own name was not involved. Since we are concerned with the right to use one's own name in the present case, we must next decide whether there was a fraudulent use of the name or whether the appellant relinquished her rights by contract or estoppel.

■ Appellant first contends that there was no evidence to support issues numbers 3 and 5, which essentially found that Mary Haltom committed a fraud on the public. We agree. Fraud in the use of one's own name involves something beyond

merely having a well known name and using it to one's advantage in the conduct of a business. *Goidl*, 123 S.W.2d at 867. It involves an attempt to deceive the public into believing something which is not true. Appellant's use of the name "Mary Haltom" implied only that her name is Mary Haltom, which is true. Appellant is a fourth generation jeweler, and it is likely she acquired a great deal of knowledge of the jewelry business through her family; knowledge which she cannot sell to someone else. She is entitled to advertise this fact unless she relinquished her right to do so. Admittedly, appellant's use of the slogan "a tradition in fine jewelry" was deceptive because it implied that her jewelry business was part of the appellees' business. However, it is undisputed that she immediately desisted from using this slogan after appellees complained and we hold that she should not be permanently deprived of the use of her name in her business as a result.

■ Second, appellant contends that there is neither evidence nor a jury finding of a relinquishment of her rights through contract. Appellees contend that appellant relinquished her rights through a constructive contract, though admittedly not in an express contract. We disagree with appellees. " 'It is ... assumed that no one intends to part with the right to use his own name, and "a presumption will not be indulged that he intended to convey it away in the absence of express language to that effect." It must be clearly shown that it was his intention to part with his right thereto.' " *Carson v. Harris*, 242 S.W.2d 777, 780 (Tex.Civ.App.—San Antonio 1951, writ ref'd n.r.e.). In the purchase of appellant's stock, appellees did not impose limitations on appellant's use of her name as a condition of the purchase. We hold that there was no proof or jury finding of relinquishment by contract.

■ Third, appellant contends that there is neither evidence nor a jury finding of a relinquishment of her rights by estoppel. Appellees reiterate their contention that the mere existence of secondary meaning

and confusion in the marketplace estops all people from using a name already in use. Appellee cites Treece, *Some Qualifications On Everyman's Absolute Right to Use His Own Name in Business*, 46 Tex.L. Rev. 436 (1968) which suggests that the right to use one's own name should yield where there is consumer confusion.

We disagree that when a personal name has secondary meaning, this fact alone precludes all others from using that same name. Personal names, though sacred to the individual, are inherently weak as trademarks because they are likely to be concurrently or coincidentally selected by competitors with the same surname exercising their equally sacred rights. Since every person has such a sacred right, no one can appropriate a surname exclusively unless all others with the same surname voluntarily relinquish their rights. *Goidl*, 123 S.W.2d at 867. This rule is supported by the federal law refusing registration of trademarks which are "primarily merely a surname." 15 U.S.C.A. sec. 1052(e)(3) (1976).

■ Likelihood of consumer confusion may be the touchstone of the law of trademarks and unfair competition generally, but not where personal names are involved. If a person enters into business using his personal name, or if he buys a business founded on a personal name, he accepts the risk that others with the same name may follow suit, and the "likelihood of confusion" argument will not protect him. For this reason, the law encourages entrepreneurs to select unique nonpersonal tradenames in which no person is likely to have natural rights.

■ This is not to say that deceptive advertising involving a personal name cannot be enjoined, only that it must involve something beyond use of the name alone, as discussed earlier. *Goidl*, 123 S.W.2d at 867. To prevent one from using one's own name altogether, there must be an intentional and voluntary relinquishment of that right by contract or estoppel. One exam-

ple of estoppel is the express transfer of goodwill.

In the case of *Hanover Mfg. Co., Inc. v. Ed Hanover Trailers, Inc.*, 434 S.W.2d 109 (Tex.1968), the defendant, Ed Hanover, established a company bearing his personal name and then sold the business, expressly including goodwill in the sale. He thereafter established a competing business directly across the highway, again using his surname. The buyers of his first company brought suit to enjoin him from using his surname in competition. The trial court granted the injunction and the Supreme Court upheld it as follows:

> Here we have evidence and a jury finding that Edward Hanover relinquished to the Hanover Mfg. Co., Inc. the goodwill and his right to use his own name.[1] Having so done, he is now estopped from asserting that right as a defense to an action for his appropriation of the plaintiff's goodwill.

*Id.* at 112. The court's decision clearly hinged on the sale of goodwill, not on the fact that Ed Hanover allowed the company to incorporate under his name many years prior and thereafter accumulate secondary meaning.

The case at bar is distinguishable in that there was no transfer of goodwill. The contract in the record is a stock purchase agreement and does not mention goodwill. By purchasing the stock of Haltom's, Inc., appellees acquired the right to operate under the incorporated name, but did not acquire the right to prohibit appellant from using her own name in a competitive business.

Since there are no jury findings that Mary Haltom relinquished her right to use her own name by contract or estoppel, and

since the jury findings pertaining to fraudulent use of her name are not supported by the evidence, we hold that the trial court erred in rendering judgment for appellees based on the jury findings. We sustain appellant's first four points of error.

Having reversed the decision below on these four points, it is unnecessary to address the appellant's remaining points of error.

Judgment of the trial court is reversed and judgment is hereby rendered dissolving the permanent injunction.

---

1. In *Hanover*, 434 S.W.2d at 111, the Supreme Court recited four jury findings, nearly identical to the findings in the present case, which basically established (1) confusion in the marketplace, (2) existence of secondary meaning, (3) intentional deception of the public, and (4) failure by the defendant to take reasonable measures to distinguish his tradename from that of the plaintiff. If there was a specific jury finding that Ed Hanover relinquished his goodwill or his right to use his own name, the Supreme Court did not recite it along with these four. The opinion does, however, include a recitation of the language of the contract which expressly mentioned the transfer of goodwill. Therefore, rather than try to rationalize the confusion over whether a jury finding existed on this point, we will assume that the transfer of goodwill was established as a matter of law.